MARTIN OIL SERVICE, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

(Nos. 60559, 60841 cons.; ▮▮▮▮▮▮▮▮▮▮

First District (1st Division)—July 21, 1975.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

John M. Daley and Jack M. Siegel, both of Chicago, for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

A final assessment of $106,274.57, including statutory penalties and covering the period from July 1968 through June 1971, was made by the Department of Revenue of the State of Illinois (Department) under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*), against Martin Oil Service, Inc. (plaintiff). Plaintiff obtained review of this action in the circuit court (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*) which reversed the order. The Department appeals.

Plaintiff sells gasoline at retail in Illinois. At the hearing before the Department, the evidence showed that the single issue between the parties was disallowance by the Department of reduction of plaintiff's gross receipts by virtue of a stamp redemption plan used by plaintiff. Plaintiff issued stamps to its customers which were handled in books with a value of $2 each. In dealing with its customers, plaintiff treated these stamps as a volume discount. When a customer had filled a book with stamps, it could be redeemed upon his next purchase for the cash value thereof. Only full books could be redeemed except where the cus-

tomer had more than one book. In this manner, the customers obtained cash discounts on purchases made with presentation of books of stamps. A certain number of stamps would never be redeemed, and the issue was presented only concerning books actually redeemed by customers. No other criticism was made against plaintiff by the Department.

After administrative review, the final order appealed from found the issues in favor of plaintiff and against the Department and determined that there was a fatal defect in the proceedings before the Department in that the hearing officer did not make findings of fact and conclusions of law. The court also found that the findings by the hearing officer were against the manifest weight of the evidence and were contrary to law.

In this court, the Department contends that cash rebates given upon redemption of stamp books are not a valid deduction from gross receipts under the Retailers' Occupation Tax Act; the decision of the Department should be affirmed since it is supported by competent, material evidence and specific findings of fact are not required of the administrative tribunal under the statute. Plaintiff contends that the discount given for quantity sales may be deducted from gross receipts for the tax computation and that the procedural defects in the administrative proceedings rendered them entirely void.

We find no dispute of fact presented by this record. It appears to us that the only difference between these parties arises upon issues of law. Resolution of these differences requires an examination and interpretation of the pertinent statutes and regulations of the Department. The Retailers' Occupation Tax Act of Illinois contains a number of definitions which are pertinent here (Ill. Rev. Stat. 1973, ch. 120, par. 440):

> " 'Gross receipts' from the sales of tangible personal property at retail means the total selling price or the amount of such sales, as hereinbefore defined. In the case of charge and times sales, the amount thereof shall be included only as and when payments are received by the seller."

> " 'Selling price' or the 'amount of sale' means the consideration for a sale valued in money whether received in money or otherwise, including cash, credits, property, other than as hereinafter provided, and services, * * * and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever * * *."

The tax is to be imposed at the specified rate of percentage "of the gross receipts from such sales of tangible personal property * * *." (Ill. Rev. Stat. 1973, ch. 120, par. 441.) Thus, "the tax is measured by the gross receipts * * *" from sales. (*Superior Coal Co. v. Depart-*

*ment of Revenue,* 4 Ill.2d 459, 465, 123 N.E.2d 713.) In addition, "The Department is authorized to make, promulgate and enforce such reasonable rules and regulations relating to the administration and enforcement of the provisions of this Act as may be deemed expedient." (See also Ill. Rev. Stat. 1973, ch. 120, par. 451.) However, the Department is "without legal authority to limit or extend the statutory definition by its own Rules and Regulations." (*Gapers, Inc. v. Department of Revenue,* 13 Ill.App.3d 199, 202, 300 N.E.2d 779, citing *Ex-Cell-O Corp. v. Mc-Kibbin,* 383 Ill. 316, 50 N.E.2d 505.) The statute "may not be altered or added to by the exercise of a power to make regulations thereunder." (*Reynolds v. Department of Public Aid,* 26 Ill.App.3d 933, 937, 326 N.E.2d 109.) Pertinent regulations adopted by the Department are as follows:

Article III, section 3:

"3. COST OF DOING BUSINESS NOT DEDUCTIBLE

In computing retailers' occupation tax liability, no deductions shall be made by a taxpayer from gross receipts or selling prices on account of the cost of property sold, the cost of materials used, labor or service costs, freight or transportation costs, overhead costs, clerk hire or salesmen's commissions, interest paid by the seller, or any other expenses whatsoever."

Article III, section 4(b):

"DISCOUNT

If a discount is allowed for payment in cash within a stated time, any amounts realized by sellers through failure of purchasers to take advantage of such discounts will be considered to be a part of the taxable receipts from the sale. Conversely, if the seller allows the purchaser a discount from the selling price (such as a discount for prompt payment) and the purchaser avails himself of the discount so that the seller does not receive any receipts from that source, the amount of such discount is not subject to tax."

The decisive issue is the meaning of the pertinent statute in its application to the facts above stated. Both sides cite a number of authorities. Our examination of the briefs and of all of the cases cited impels us to the conclusion that none of these authorities can be considered as decisive precedent in decision of the case before us.

In *German Alliance Insurance v. VanCleave,* 191 Ill. 410, 61 N.E. 94, the supreme court considered the meaning of "gross receipts" in a case involving a taxation of the gross income of foreign fire insurance companies doing business in Illinois. Certain of these companies received premiums which were subject to a refund to the insured upon cancella-

tion of the policy. The court held that where policies have in fact been "canceled and the money returned, the entire or gross premium receipts cannot, by any fair interpretation, include the moneys so returned." The court pointed out that these returned premiums were "not paid as a liability of the insurance company or as a charge or expense of conducting the business  *  *  *." (191 Ill. 410, 415.) This case was cited in *State v. Illinois Central R.R. Co.,* 246 Ill. 188, 279, 92 N.E. 814, as authority for the statement there set forth that unearned premiums on an insurance policy paid in advance which were to be refunded upon cancellation, were not to be included as a part of the gross receipts of the insurance company. In other words, these cases hold that lawful rebates or refunds may properly be excluded from gross receipts.

Perhaps the case most analogous to the situation before us is *Standard Oil Co. v. Michigan* (1937), 283 Mich. 85, 276 N.W. 908. There, plaintiff sued to recover sales taxes paid. The assessment included cash discounts granted by plaintiff on quantity sales of gasoline and oil. The Michigan tax is imposed upon the privilege of making retail sales " '  *  *  * measured by the *gross proceeds* of such sales, less deductions allowed by statute; '  *  *  *." (283 Mich. 85, 87.) The Michigan statute defines "gross proceeds" as " 'the amount received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of the materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever  *  *  *.' " (283 Mich. 85, 87.) As shown, section 1 (par. 440) of the Retailers' Occupation Tax Act includes in its definition of "selling price" the consideration for sale which is to be "determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever  *  *  *." The Michigan court held that quantity discounts given in retail sales were not part of the gross proceeds of the sale in computing the tax.

*Dick's Vending Service, Inc. v. Department of Revenue,* 53 Ill.2d 375, 293 N.E.2d 129, is neither controlling, nor analogous in the case before us. The case involved the Retailers' Occupation Tax Act and also required an interpretation of the Cigarette Tax Act (Ill. Rev. Stat. 1973, ch. 120, pars. 453.1 *et seq.*) and the Cigarette Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, pars. 453.31 *et seq.*). The majority opinion held that a retailer of cigarettes, in calculating his occupation tax, could deduct amounts received by him in connection with the Cigarette Use Tax Act. The dissent reached a contrary result based, at least in part, upon the view that the amounts thus received were actually collected in connec-

tion with the Cigarette Tax Act. Both of these points of view involve an interpretation of the Cigarette Tax Act and the Cigarette Use Tax Act. The dissent also espoused the theory that these two Acts are complementary so that no deduction should be allowed to the retailer by virtue thereof in computing amounts due under the occupation tax.

*American Oil Co. v. Mahin,* 49 Ill.2d 199, 273 N.E.2d 818, involved the Retailers' Occupation Tax Act and also the Illinois Motor Fuel Tax Law (Ill. Rev. Stat. 1973, ch. 120, par. 417 *et seq.*). Prior to that litigation, the Department of Revenue in its regulations permitted the taxpayer to exclude the motor fuel tax from the base upon which the retailers' occupation tax and the use tax were computed. The Department of Revenue then attempted to revise its regulations so as to include the amount of the motor fuel tax within the base in calculating the occupation tax. The court held that the Department lacked authority to impose this revision of the regulation. Although not similar to the situation before us, *American Oil Co.* bears some relation by analogy to the case at bar. There, the retailer collected and had temporary possession of the amount which he would later be obliged to remit to the Department of Revenue as use tax. Here, the retailer never actually collects a portion of the original selling price of the gasoline because he reduces the price to the customer upon production and redemption of a gasoline coupon book.

*American Airlines, Inc. v. Department of Revenue,* 58 Ill.2d 251, 319 N.E.2d 28, involved liability for retailers' occupation tax in connection with sale of meals to an airline for use of its passengers and crew members. The food was given to passengers without separate charge but the cost of food served to the crew was deducted from their food allowance. The supreme court held the vendor of the food was liable to pay the tax insofar as the food was served by the airline to its passengers. This transaction did not constitute a resale by the airline since it did not transfer the food "for a direct and specific consideration." (58 Ill.2d 251, 257.) By way of contrast, where food was served to employees of the airline for a separate charge against the food allowance, the food in effect had been sold to the employer by the caterer for resale and then transferred by the airline to its employees, thus creating a liability upon the airline as employer and seller for payment of the tax. That decision throws no light upon the case before us.

In *Spagat v. Mahin,* 50 Ill.2d 183, 277 N.E. 834, the supreme court held that in a sale of wall-to-wall carpeting to the user, installation charges made by the seller were not deductible from the sales price. Since installation was actually an integral part of the sale of the carpeting, the seller was liable for the entire sales price without deduction. In *Gapers, Inc. v. Department of Revenue,* 13 Ill.App.3d 199, 300 N.E.2d

779, this court held that a caterer who contracted with customers for furnishing of meals could not deduct the cost of transporting food and equipment to and from the customer's home from gross receipts in computing the tax, since the delivery charges were part of the cost of doing business. Neither of these authorities is useful here.

The closest precedent to the case before us is the holding of the Michigan court in *Standard Oil Co.* The only factual difference which appears is that, in the Michigan case, the discount was given to the consumer at the time of the sale and as part of that transaction. In the case before us, the identical situation exists except that allowance of the discount is postponed from the time of the original transaction and granted as part of a later additional sale at the time that the vendee presents a completed coupon book. In our opinion that time element does not change the nature of the transaction between the parties. On this same basis the definition of "gross receipts" set forth in *German Alliance Insurance Co.* and *State v. Illinois Central R.R. Co.*, above cited, provides a strong analogy in support of plaintiff's position. Under this definition, since the plaintiff never received the cash represented by the value of a redeemed coupon book, this amount should be deducted from gross receipts by which the tax in turn is measured. Consequently the plaintiff as vendor should be allowed to deduct the amount of the cash discount at the time that it is actually allowed to the consumer.

The seller's gross receipts are in fact reduced by the allowance of the cash discount and it is no more than fair and proper to the seller to allow this discount even though it was not granted in a prior transaction when the coupon book was issued. In defining selling price, the statute forbids any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever. The statute here involved, as all other taxing statutes, is to be strictly construed most strongly against the government and in favor of of the taxpayer. (*Ingersoll Milling Machine Co. v. Department of Revenue*, 405 Ill. 367, 373, 90 N.E.2d 747.) Under the doctrine of *ejusdem generis*, the phrase "or any other expense whatsoever" as used in the statute actually means any additional deduction such as the cost of property sold, materials used, or labor service cost or any similar deduction. (*Bullman v. City of Chicago*, 367 Ill. 217, 226, 10 N.E.2d 961.) The deduction of a cash discount given to the buyer is not forbidden.

As we have shown, the regulations themselves cannot be used to broaden the tax imposition authorized by the statute. However, we do not find in the pertinent regulations any language which would justify refusal of cash discounts as a proper deduction. Section 3 of article III of the regulations contains much the same language as the

Michigan definition of gross proceeds above set forth in *Standard Oil Co. v. State*. No question is involved in the case before us of the deduction of any expense of any kind. In addition, section 4 of article III provides that the cash discount is not to be deducted where the purchaser fails to use it to his own advantage. In such case, the unused discount would be considered as a part of the taxable receipts. On the other hand, the regulation (art. III, sec. 4(b)) further states that, where the seller allows a discount which is availed of by the purchaser so that the seller does not receive any receipts from that source, the amount of such discount is not subject to tax and is properly deducted from gross receipts. We find no requirement or condition in this regulation which prevents deduction of cash discounts which are postponed, as long as the discounts are in allowance to the purchaser from the selling price, "so that the seller does not receive any receipts from that source."

We therefore, conclude that plaintiff acted properly in deducting the amount of cash discounts which it gave purchasers. Accordingly the judgment appealed from will be affirmed.

A statement is required concerning the remaining contention of plaintiff with reference to failure of the hearing officer to state findings of fact. In *Suttle v. Police Board*, 11 Ill.App.3d 576, 297 N.E.2d 174, this court held that findings of fact were not indispensable in connection with a decision of the Police Board for discharge of a civilian employee. This result was based in part on the lack of statutory requirement for express findings of fact in Police Board decisions. (See 11 Ill.App.3d 576, 579.) In *Suttle*, we also differentiated *Maywood Park Trotting Association, Inc. v. Illinois Harness Racing Com.*, 15 Ill.2d 559, 155 N.E.2d 626, cited and relied upon by plaintiff. There, the Racing Commission was commanded by statute to consider certain factors set forth by the legislature for granting racing licenses and allocating dates for racing meets. Therefore, in that case, the absence of specific findings made the basis of the administrative decision questionable and weakened the force of its determination. (15 Ill.2d 559, 563. See also *Lo Piccolo v. Department of Registration & Education*, 5 Ill.App.3d 1077, 1082, 284 N.E.2d 420.) In the case at bar, we reach the same result as in *Suttle* with particular attention to the complete lack of any factual issue in the record before us. Since the entire question presented is one of law, it would be an idle gesture to remand the cause to the administrative body for the statement of the facts as above set forth which are admittedly uncomplicated and undisputed.

Judgment affirmed.

BURKE, P. J., and EGAN, J., concur.