JEFFERSON ICE COMPANY, Appellant, v. J. THOMAS JOHNSON, Director of Revenue, Appellee.

First District (1st Division) No. 84—1953

Opinion filed December 30, 1985.

628

Morton Siegel, Michael A. Moses, and James L. Webster, all of Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Edward M. Kay, Assistant Attorney General, both of Chicago, of counsel), for appellee.

JUSTICE QUINLAN delivered the opinion of the court:

The Illinois Department of Revenue assessed taxes in the amount of $42,195, plus interest and penalties, against Jefferson Ice Company, covering July 1, 1974, through 1977. The trial court affirmed the assessment on administrative revue. Jefferson appeals.

Jefferson is a manufacturer and distributor of ice, which sells ice at both wholesale and retail. During the years in question, Jefferson's reported gross sales receipts were $21,549,000. Jefferson claimed that $12,046,000 of those sales constituted sales for resale, which are not taxable. After an audit of September, 1976, the Department allowed $11,399,241 of the deductions claimed by Jefferson and disallowed $647,198 of those claimed deductions. Basically, the Department disallowed that portion of the claimed deductions because Jefferson had not submitted certificates of resale for those transactions. The amount of $477,063.74 of the disallowance of the claimed deductions came from Jefferson's "route" sales, and $170,135.26 of the disallowance came from sales from vending machines operated by Jefferson.

At the administrative hearing, the Department submitted into evidence corrected tax returns for the period in question. Mr. Gerald

Pearce, the department's auditor who was responsible for the instant audit, testified that his audit uncovered "resales claimed in error" which accounted for the bulk of the assessment. Mr. Pearce defined the erroneous claims as resale deductions for which Jefferson did not have resale certificates. Mr. Pearce stated that he would have allowed the claimed deductions if Jefferson had presented resale certificates. Jefferson had given the witness invoices for the sales during the audit period, and Mr. Pearce testified he did not visit the customers to determine whether the various sales were for resale. Mr. Pearce also disallowed Jefferson's claimed 40% deduction for sales from its vending machines. This claimed percentage deduction was based, Jefferson employees told him, on an understanding between the department and Jefferson dating back to the mid-1960's.

Walter Sundmacher, assistant secretary of Jefferson, testified he worked for the company for 50 years and was familiar with most of Jefferson's customer accounts. He stated that in the 1960's, after a hearing before the Department, the Department and Jefferson agreed to assessing vending machine sales as 40% resale sales, and 60% retail sales. Because the customers of the vending machines paid in cash at times when the plant was closed, there was no way to determine who purchased the ice. When shown the invoices for route sales supplied to the Department's auditor, Mr. Pearce, Mr. Sundmacher stated that he could not tell from the invoices which sales were for resale. However, the list of customers in the invoices included gasoline stations, restaurants, and liquor stores which probably resell the ice. Jefferson's books indicated the company's determination of whether each sale was for resale, Mr. Sundmacher said. These records were not admitted into evidence. The witness further stated that if the Jefferson "felt" the ice was sold for resale, Jefferson would not charge tax. Jefferson services between 800 and 900 accounts daily, and sometimes Jefferson's drivers would have difficulty obtaining resale certificates because the customers did not want to be bothered. Even if the company did not receive resale certificates, it would not charge tax on sales which Jefferson believed to be for resale.

Mr. Ralph Jacobson, a hearing officer for the Department, testified he conducted the hearing concerning Jefferson in the mid-1960's. Mr. Jacobson stated that the 40%-60% division between wholesale and retail sales from the vending machines was based on a company survey of customers purchasing ice from the machine at that time.

The Revenue Code provides that the Department shall correct the retailers' occupational tax returns according to its "best judgment and information." (Ill. Rev. Stat. 1981, ch. 120, par. 443.) Such a fil-

ing establishes the department's *prima facie* case against the taxpayer. (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238.) Jefferson argues that because the Department based its corrected returns on the lack of certificates of resale rather than the testimony of company officials, the Department failed to correct the returns according to its "best judgment and information," and thus a *prima facie* case was not established against Jefferson.

■ ■ A corrected return as prepared by the Department is also deemed *prima facie* correct. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) At the administrative hearing, the department will successfully establish its *prima facie* case simply by submitting the corrected tax return into evidence. (*Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 1134, 421 N.E.2d 1030.) However, if a department's corrected return is challenged, the courts have required only that the method employed by the department in preparing the corrected return "must meet some minimum standard of reasonableness." *Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 266, 453 N.E.2d 48.

■ In the case at bar, Jefferson never challenged the method of preparing the corrected return by the audit of a single month, either at the time of the audit or at trial. Furthermore, the Department admitted into evidence the work papers of the auditor, who testified explaining the methods upon which he conducted the audit and the bases upon which he approved or dissallowed the claimed deductions. Therefore, we conclude that the Department has sufficiently established that the method used in preparing the corrected returns met the test of minimum reasonableness. Accordingly, the Department established its *prima facie* case.

■ ■ Once the Department has established its *prima facie* case, the burden shifts to the taxpayer to rebut it. (*Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 1134, citing *Anderson v. Department of Finance* (1938), 370 Ill. 225, 18 N.E.2d 206; *Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) Jefferson asserts that it successfully rebutted the *prima facie* case here, through testimony at the administrative hearing and by the fact that the Department erred in basing its final assessment simply on the presentation of certificates of resale to establish the deduction.

The Revenue Code provided in pertinent part:

> "Except as provided hereinabove in this Section, no sale shall be made tax-free on the ground of being a sale for resale unless

the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." Ill. Rev. Stat. 1973, ch. 120, par. 441(c).

In *Tri-America Oil Co. v. Department of Revenue* (1984), 102 Ill. 2d 234, 464 N.E.2d 1076, the supreme court held that the requirement that a company which is engaged in both wholesale and retail sales must present certificates of resale or it will be held liable for tax. The court wrote:

"Tri-America is engaged in the business of selling tangible personal property at both wholesale and retail, and therefore the provisions of the Retailers' Occupation Tax Act, including section 2c, are applicable to it and require it to obtain a resale tax certificate number from purchasers who purportedly intend to resell the product they purchase. If a purchaser does not have a resale number and therefore cannot comply with the requirements of section 2c by certifying to the seller who is operating as both a wholesaler and retailer that the sale is nontaxable for purposes of the Act, that sale is to be treated as a retail sale." (102 Ill. 2d 234, 239.)

Furthermore, the court explained that the presumption of the *prima facie* case is not rebutted by evidence that particular sales may in fact be wholesale absent the required documentation stating that:

"Section 2c *** provides a method whereby a seller can avoid paying a retailers' occupation tax on sales it makes to others, sales which might otherwise be taxable as retail sales even though they may not in fact be retail sales. The presumption raised by section 4 is thus not that a given sale is a sale at retail, but is rather that tax is due in the amount indicated by the Department. The presumption is rebutted, not by evidence that certain sales were made for resale, but either by a showing of compliance with section 2c or by a showing that section 2c does not apply." 102 Ill. 2d 234, 240.

Finally, Jefferson's reliance on *Illinois Cereal Mills, Inc. v. Department of Revenue* (1983), 99 Ill. 2d 9, 457 N.E.2d 385, and *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 413 N.E.2d 370, is misplaced. In *Dearborn Wholesale Grocers*, the court held that the requirement to present resale documentation did not apply to companies engaged exclusively in wholesale transactions. And, in *Illinois Cereal Mills*, the court extended *Dearborn* to include companies which "made only casual or isolated retail sales as an accom-

modation to its regular customers." See *Tri-America Oil Co. v. Department of Revenue* (1984), 102 Ill. 2d 234, 239.

In distinguishing its decision in *Tri-America* from its earlier decisions in *Illinois Cereal Mills* and *Dearborn Wholesale Grocers,* the supreme court stated:

> "It is only in a case like the one presented here where the seller deals both at wholesale and retail that section 2c can have any application. It is precisely in the context in which some sales of a particular business are taxable and some are not, and the retail sales made by the business are not a minimal amount as in *Illinois Cereal Mills,* that *documentation is required to separate the retail and wholesale sales and to insure that the State collects* all the revenue which is legitimately due." (Emphasis added.) 102 Ill. 2d 234, 239-40.

In the case at bar, it is undisputed the Jefferson is actively engaged in both wholesale and retail sales. According to Jefferson's own calculations, its retail sales account for 45% of its total sales. Therefore, on the basis of *Tri-America,* the documentation requirements are applicable to Jefferson and are mandatory in order that Jefferson be relieved of the obligation of paying tax on its sales.

We note that effective September 19, 1984, the statute was amended. Currently, the failure to present the required documentation only establishes a presumption that the taxpayer is obligated to pay tax. The amendment provides:

> "Failure to present an active registration number or resale number and a certification to the seller that a sale is for resale creates a presumption that a sale is not for resale. This presumption may be rebutted by other evidence that all of the seller's sales are sale for resale, or that a particular sale is a sale for resale." Ill. Rev. Stat., 1984 Supp., ch. 120, par. 441(c).

Recently we reiterated some basic tenents of statutory construction:

> "Without a specific statutory provision stating that a statute should be applied retrospectively, it can only be applied prospectively. (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1, 426 N.E.2d 824.) An amendment to a statute indicates a legislative purpose to change existing law. *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 410." *In re Estate of Skoufes* (1985), 138 Ill. App. 3d 954, 956.

In the case at bar, the amendment to the Revenue Code simply states that it becomes effective upon its becoming law. There is no indication that it is intended to be applied retroactively. We thus

conclude that the amendment was intended and should be applied only to tax assessment after September 19, 1984. Accordingly, the amendment does not apply to the instant case which deals with taxes from 1974 through 1977, in which the administrative hearing was conducted in 1981, and in which the trial court affirmed the administrative decision prior to the effective date of the statute.

■ Furthermore, even if we did apply the current amendment, we doubt whether Jefferson's evidence successfully rebutted the *prima facie* case established by the Department or the presumption against Jefferson because of the lack of documentation. Generally, it has been held that some form of documentation is required to rebut both of these presumptions. (See *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154, 156, 242 N.E.2d 205; *Quincy Trading Post, Inc. v. Department of Revenue* (1973), 12 Ill. App. 3d 725, 298 N.E.2d 789.) In the case at bar, Jefferson merely presented the testimony of an employee that these particular accounts were probably for resale, since the type of customers reflected in the accounts generally resell the ice. We do not believe this testimony is sufficient to rebut the presumption that Jefferson is obligated to pay the tax because of its failure to present the certificates of resale, as provided in the recent amendment.

■ ■ Finally, the Department is not stopped from disallowing the deductions for the vending machine sales because of the previous agreement between the Department and Jefferson. Estoppel does not apply to the State in the exercise of its taxing powers absent extraordinary circumstances. (*Citizens State Bank v. Johnson* (1985), 130 Ill. App. 3d 925, 928, 474 N.E.2d 791, citing *Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 135, 442 N.E.2d 846; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 5, 280 N.E.2d 437.) A regulation promulgated by the Department which is erroneous exceeds its authority and is void. (*Montgomery Ward Life Insurance Co. v Department of Local Government Affairs* (1980), 89 Ill. App. 3d 292, 411 N.E.2d 973.) Thus, "the government is not estopped by previous acts or conduct of its agents with reference to the determination of tax liabilities or by failure to collect the tax, nor will the mistake or misinformation of its offices stop it from collecting the tax." *Material Service Corp. v. Department of Revenue* (1982), 105 Ill. App. 3d 74, 78, 434 N.E.2d 763.

In the case at bar, it is clear that any agreement between Jefferson and the Department regarding the deduction of taxes from vending machine sales, absent the presentation of certificates of resale, was invalid under statute as interpreted by the supreme court in *Tri-*

*America.* Therefore, any such agreement exceeded the authority of the Department, and the Department is not now estopped from assessing the tax against Jefferson correctly.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.