CENTRAL FURNITURE MART, INC., Plaintiff-Appellant, v. J. THOMAS JOHNSON, Director of Revenue of the Department of Revenue, Defendant-Appellee.

First District (3rd Division)   No. 85—3599

Opinion filed June 10, 1987.—Rehearing denied August 7, 1987.

Morton Siegel, Michael A. Moses, and James L. Webster, all of Siegel, Moses & Schoenstadt, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Central Furniture Mart, Inc., appeals from a judgment of the trial court affirming, on administrative review, final assessments imposed by defendant, J. Thomas Johnson, Director of Revenue of the Illinois Department of Revenue, for retailers' occupation tax deficiencies.

Plaintiff is a retail furniture store located in Chicago. The Department conducted an investigation and audit of the store and determined that certain deductions should be disallowed. The Department compiled a corrected return and issued notices of tax liability to plaintiff. The notices assessed Illinois retailers' occupation taxes (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) in the amount of $35,729; municipal retailers' occupation tax (Ill. Rev. Stat. 1977, ch. 24, par. 8—11—1) in the amount of $8,931; interest in the amount of $11,949.87 and a $2,233 penalty; and regional transportation authority retailers' occupation taxes, penalty and interest in the amount of $6,063.49.

Plaintiff contested the notices. At an administrative hearing on May 17, 1982, the Department entered into evidence its corrected returns. Michael J. Millen, a Department auditor, testified that he conducted an audit of plaintiff and prepared the corrected returns based upon plaintiff's books, records and general ledgers.

Millen disallowed plaintiff's claimed deduction for tax collection. He testified that, based upon his test check, only a few of plaintiff's invoices contained a separately stated amount representing a collected sales tax. A small allowance was recognized for those stated taxes

and the remaining claimed deduction for tax collection was disallowed.

Millen testified further that he disallowed plaintiff's claimed setoff for bad debts contained in a reserve fund. Plaintiff sold its installment contracts to finance companies and part of the sale proceeds was placed in reserve accounts. Plaintiff would receive a partial rebate from the account when it reached a certain amount. The claim was disallowed because it was considered to be a discount on the sale of paper, which is a nondeductible cost of doing business. Credits were allowed, however, for repossessions where plaintiff had to repurchase the installment contracts, and billings and checks were shown.

Michael Jacobson, plaintiff's owner, testified that plaintiff is in a highly competitive business. Salesmen would write only the total sales price on the invoice, and that price included the tax. On the salesman's scratch pad, however, the tax was listed separately and shown to the customer. The customer was given a copy of the computations if requested, but otherwise the scratch paper was thrown away. In figuring out the salesman's commission, the tax was deducted. Plaintiff introduced the July commission sheet of one salesman. Jacobson testified that the amounts listed on the sheet were less sales tax.

Jacobson testified further that plaintiff sold installment contracts to finance companies, under which plaintiff could repurchase the paper. The contracts also provided that a percentage of the purchase price would be placed in a reserve account. The finance company could charge unpaid installments against this fund. When the account exceeded 40% of the total unpaid installments of all other outstanding paper, the excess was divided equally between plaintiff and the finance company. Jacobson stated that the reserve funds were collateral for bad debts. Other contracts had no recourse provision, and thus plaintiff was not entitled to the reserve funds until all outstanding installment contracts were paid in full.

Plaintiff also offered the testimony of three other witnesses. The hearing officer found that their testimony would be cumulative, and the Department waived the calling of those witnesses.

The hearing officer recommended that the notices of tax liability be upheld. On August 11, 1983, the Department issued its final assessments in the amount of $71,832.57 and $7,794.73. The hearing officer upheld the auditor's disallowance of plaintiff's claimed deduction for collected sales tax because plaintiff failed to present sufficient evidence that the taxes were separately stated and collected. The hearing officer also upheld the auditor's rejection of a setoff for charges against plaintiff's reserve fund. The contracts with the finance com-

panies stated that the recourse provisions applied only to installment contracts specifically endorsed, but no evidence was presented as to which contracts were so endorsed. The reserve funds, therefore, constituted a discounting of paper and were a nondeductible cost of doing business.

On September 13, 1983, plaintiff filed a complaint for administrative review. On October 18, 1985, the trial court upheld the Department's decision.

■■ The findings and conclusions of an administrative agency are *prima facie* correct and will not be disturbed unless they are against the manifest weight of the evidence. (*Eastman Kodak Co. v. Fair Employment Practices Com.* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.) The Department of Revenue is required to correct retailers' occupational tax returns according to its best judgment and information. (Ill. Rev. Stat. 1977, ch. 120, par. 443.) A corrected return prepared by the Department is deemed *prima facie* correct. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) At the administrative hearing, the Department successfully establishes a *prima facie* case simply by submitting the corrected return into evidence. (*Jefferson Ice Co. v. Johnson* (1985), 139 Ill. App. 3d 626, 487 N.E.2d 1126.) If the corrected return is challenged, the Department must show that its method of preparing the corrected return meets some minimum standard of reasonableness. *Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48.

■■ A taxpayer must collect and record taxes as distinct items separate and apart from the selling price of tangible personal property. (Ill. Rev. Stat. 1977, ch. 120, par. 439.3A.) The Department here showed that plaintiff failed to prove it followed this required procedure. If the tax is not stated separately, it will be assumed that it was not collected. (Use Tax Regulation 150.1315.) All sales of tangible personal property are taxable unless the taxpayer produces evidence identified with books and records to establish its claim of nonliability. (*Pedigo v. Department of Revenue* (1982), 105 Ill. App. 3d 759, 434 N.E.2d 860.) The taxpayer must keep adequate books and records of its transactions. Ill. Rev. Stat. 1977, ch. 120, par. 446.

In the present case, the Department submitted the corrected tax return into evidence. Its auditor testified, explaining the methods used in conducting the audit and the basis upon which he allowed or disallowed the claimed reductions. The audit files and work papers of the Department were also introduced into evidence. The auditor met with Jacobson and plaintiff's accountants and examined plaintiff's tax returns, ledgers, invoices and sales journals. The auditor concluded

that plaintiff did not keep books and records which showed separately stated sales taxes which were collected from customers and remitted by plaintiff.

■ The Department, therefore, has sufficiently established that its method used in preparing the corrected returns met some minimum standard of reasonableness. (See *Smith v. Department of Revenue* (1986), 143 Ill. App. 3d 607, 493 N.E.2d 653; *Jefferson Ice Co. v. Johnson* (1985), 139 Ill. App. 3d 626, 487 N.E.2d 1126.) The Department successfully established its *prima facie* case.

After the Department establishes its *prima facie* case, the burden shifts to the taxpayer to overcome it. (*Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) Plaintiff urges that it successfully rebutted the *prima facie* case through the testimony presented at the administrative hearing. Jacobson testified that the sales taxes were separately stated on scratch paper, which was then thrown away. Only one such scratch pad calculation and one invoice were introduced into evidence. Although the invoices have a space to separately list the tax, no tax was listed on the invoices. The commission sheets were unrelated to sales invoices and the hearing officer could find they failed to establish that the taxes were separately stated and collected. Thus, the hearing officer could conclude that the testimony of plaintiff's owner was insufficiently corroborated by records and books.

■ A taxpayer cannot overcome the Department's *prima facie* case merely by denying the accuracy of its assessments. (*Smith v. Department of Revenue* (1986), 143 Ill. App. 3d 607, 493 N.E.2d 653; *Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48; *Masini v. Department of Revenue* (1978), 60 Ill. App. 3d 11, 376 N.E.2d 324.) The taxpayer must present evidence which is consistent, probable, and identified with its books and records. (*Fillichio v. Department of Revenue* (1958), 15 Ill. 2d 327, 155 N.E.2d 3.) Because plaintiff's challenge was unaccompanied by sufficient documentary support, the hearing officer could properly find that plaintiff failed to overcome the Department's *prima facie* case. See *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 421 N.E.2d 1030.

Plaintiff's reliance on *Sunnyland Cabinet & Millwork, Inc. v. Department of Revenue* (1977), 52 Ill. App. 3d 25, 362 N.E.2d 1367, is misplaced. In that case, the Department admitted that the tax was separately stated, collected and remitted, as shown by itemized work sheets kept on file by the taxpayer. The deduction was disallowed only because the tax was not separately shown on customer invoices. The

court set aside the Department's findings because the taxpayer established with its records that the taxes were separately stated and collected. In contrast, the Department here does dispute whether plaintiff separately stated the tax on the destroyed scratch paper, or collected and remitted the tax. The Department's finding on this issue was not against the manifest weight of the evidence.

■ Plaintiff next contends that the Department incorrectly disallowed the claimed deductions for bad debts. Taxes under the Act are based upon a percentage of the gross receipts. (Ill. Rev. Stat. 1977, ch. 120, par. 441.) Gross receipts are the total selling price or the amount of such sales, which is the consideration for a sale, whether received in money or otherwise, including credits, without any deduction on account of the cost of the property sold "or any other expense whatsoever." (Ill. Rev. Stat. 1977, ch. 120, par. 440.) Retailers' Occupation Tax Regulation 130.1960(c)(1) provides that when a retailer of tangible personal property sells an installment contract or paper to a third party, the difference between the selling price of the personal property and the installment contract is a nondeductible cost of doing business.

In the present case, plaintiff sells personal property to a customer. Plaintiff consequently incurs tax liability based upon that sale. Later, plaintiff sells the installment contract, or paper, to a finance company. Tax liability is measured, however, by the selling price of the property.

The Department does allow a retailer credit for taxes paid on personal property which is later returned or repossessed. (*German Alliance Insurance Co. v. VanCleave* (1901), 191 Ill. 410, 61 N.E. 94; Retailers' Occupation Tax Regulations 130.401(b), 130.1960(d).) This credit, however, is in regard to a direct transaction between the retail store and its customer. The relevant transactions here are between the retail store and a finance company, which is not directly related to the initial sale which constitutes the taxable event.

The Department allowed setoffs for installment contracts which plaintiff repurchased from finance companies where plaintiff was able to document the transactions. However, even plaintiff did not treat the cost of selling its installment contracts to finance companies as bad debts, as evidenced by their income tax returns. We cannot say, therefore, that the Department's disallowance of plaintiff's claimed credit for bad debts based on the reserve fund payouts was against the manifest weight of the evidence. See Retailers' Occupation Tax Regulation 130.1960.

Plaintiff cites several cases in support of its position. (See *Saxon-*

*Western Corp. v. Mahin* (1980), 81 Ill. 2d 559, 411 N.E.2d 242; *German Alliance Insurance Co. v. VanCleave* (1901), 191 Ill. 410, 61 N.E. 94; *Martin Oil Service, Inc. v. Department of Revenue* (1975), 30 Ill. App. 3d 927, 334 N.E.2d 227.) These cases are distinguishable, however, because they either do not address a taxpayer's transactions subsequent to the sale of personal property to the customer or, unlike this case, they do not involve a direct cash discount given to a buyer from a seller. *Cf. Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 372 N.E.2d 651 (retail seller cannot deduct from his gross receipts, upon which sales tax is based, amount customer receives later from manufacturer as a rebate).

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.