THE ESTATE OF HERMAN GRAHAM, Deceased, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee and Cross-Appellant.

Fifth District No. 5—86—0609

Opinion filed November 6, 1987.

Ronald D. Stanley, of Sterling & Stanley, P.C., of Fairview Heights, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiffs Thomas L. Graham, Jerry D. Graham and Ronnie J. Graham, d/b/a Misty Farms, and Lena Graham, d/b/a Graham Stock Farm, appeal from a judgment of the circuit court of Marion County slightly reducing but generally affirming, on administrative review, final assessments imposed on them by defendant, the Department of Revenue (hereinafter the Department), for tax deficiencies due under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440 *et seq.*), the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 24, par. 8—11—1 *et seq.*), and the Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.1 *et seq.*). Plaintiffs contend the Department improperly taxed the use of certain horses, arguing the use was exempt because the horses were breeding animals. The Department cross-appeals, contending the trial court erred when it eliminated the assessment for one particular horse. No appeal has been taken from a portion of the judgment which reversed the assessment on the estate of Herman Graham. We affirm in part and reverse in part.

Plaintiffs are family members who operate two horse ranches near Salem, Illinois, and these ranches purchase, sell, race, and breed horses. The Department conducted an audit of plaintiffs' businesses for the year January 1 through December 31, 1976, and determined that taxes were owing on plaintiffs' use of several horses. The Department compiled returns and issued notices of tax liability to plaintiffs, who contested the assessments. An administrative hearing was held on August 8, 1979, after which the hearing officer concluded that an exemption in the Department's regulations for animals used "for breeding purposes" did not apply in plaintiffs' circumstances. The Department then issued its final assessments, including penalties and accrued interest, in the following amounts: Lena Graham, d/b/a Graham Stock Farm, retailers' occupation tax and use tax of $8,158.58, municipal retailers' occupation tax of $170, a penalty of $1,665.72, and interest of $3,258.17, for a total liability of $13,252.47; Thomas L. Graham, Jerry D. Graham and Ronnie J. Graham, d/b/a Misty Farms, use tax of $6,849, a penalty of $1,368.80, and interest of $2,636.20, for a total liability of $10,854. Plaintiffs thereafter filed a complaint for administrative review in the circuit court of Marion County. The court reversed the assessment against the estate of Herman Graham, eliminated the tax related to the horse named Brett's Jet for the remaining plaintiffs, but affirmed the Department's final assessments in all other respects.

At the administrative hearing, the Department presented its returns and one witness, Karl Gladson, a field auditor employed by the

Department. Gladson testified that he conducted an audit of plaintiffs' businesses and concluded that some of the horses purchased by plaintiffs in 1976 were racing horses, while others were breeding horses. Gladson testified: "I considered race horses tangible personal property to be used for the purpose of racing, and that they had been either purchased, they had been purchased for the prime purpose of racing ***." Gladson also testified: "I considered that when a horse was trained and raced, he was bought for racing. If you hadn't trained him or you just strictly bred him, or bought him bred, he was strictly for breeding purposes, but my idea was when a horse got too old to race, if you started breeding him, it didn't make a breeder to start with, that he was originally bought for racing and you were helping to win prizes." He testified that if a horse ran in one or more stake races after being purchased by plaintiffs, he concluded it was subject to the use tax. However, if the horse ran only in what are known as claiming races it would not be taxed. Gladson explained that the Department told him "to overlook" horses entered in claiming races, which are races in which horses can be purchased by eligible buyers.

Plaintiff Ronnie Graham testified at the administrative hearing that his family has been in the business of breeding and selling horses since 1948. Ronnie, who himself has been in the business since 1969, considers himself an expert in the rearing, breeding, training and sale of horses. He belongs to several associations of breeders and trainers, and recently served as treasurer of the Illinois Harness Horsemen's Association. Ronnie testified he knows of no breeder of standard-bred or thoroughbred horse stock in the country who has made a success of breeding and selling stock without having proved the bloodlines of the animals by racing them. He testified that a horse must prove its ability to become a sire, and the only way to demonstrate this ability is through racing in stake races. Graham stated that racing a horse is not inconsistent with the intent to use it for breeding. He further testified that the family's income from the breeding and sale of horses far exceeds the income from racing, and that the family only breaks even from the business of racing horses. He testified that racing is incidental to proving stock for breeding purposes. Of the 100 horses owned by the family, 16 are racehorses, according to Graham, and the rest are "brood mares and winglings." Graham testified that the breeding and sale of horses is the family's "primary business focus."

Based upon this evidence, the hearing officer concluded that an exemption in the Department's regulations for the "sale of bulls, stallions or other servicing animals for breeding purposes" should be ap-

plied only to animals used on a farm and not to racehorses. The hearing officer found that the horses in question were used for both racing and breeding, but since they were used for racing, they were subject to the use tax even if the regulation did exempt breeders of racehorses. The hearing officer agreed with plaintiffs that a horse's success as a racer is related to its success as a breeder, but held that when horses are used for both purposes, the State can tax the use of the horses that are used for racing. The Department thereafter filed its final assessments, and plaintiffs filed their complaint for administrative review in the circuit court.

Section 3 of the Use Tax Act provides: "A tax is imposed upon the privilege of using in this State tangible personal property *** purchased at retail from a retailer." (Ill. Rev. Stat. 1985, ch. 120, par. 439.3.) The Use Tax Act is closely related to the Retailers' Occupation Tax Act, and section 12 of the Use Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 439.12) incorporates by reference provisions of the Retailers' Occupation Tax which are pertinent to this case. In addition, the Department's use tax regulations incorporate by reference all of the retailers' occupation tax regulations which are not incompatible with the Use Tax Act. (86 Ill. Admin. Code 150.1201 (1985).) Also, section 3 of the Use Tax Act provides that if the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the use tax shall not apply. Therefore, we rely on statutory provisions and regulations under both acts in our analysis.

Section 5 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 444) expressly provides that where, as here, a person subject to the Act fails to file a return, the Department is required to determine the amount of tax due according to its best judgment and information. The Department's determination is *prima facie* correct and constitutes *prima facie* proof of the correctness of the amount of tax due. (Ill. Rev. Stat. 1985, ch. 120, par. 444.) The Department is not required to substantiate the basis for its determination by placing into evidence plaintiffs' books and records. (*Smith v. Department of Revenue* (1986), 143 Ill. App. 3d 607, 611, 493 N.E.2d 653, 656.) If the method employed by the Department to calculate the amount of tax due is called into question, the record must show only that the techniques and assumptions which the Department used met some minimum standard of reasonableness. (143 Ill. App. 3d at 611, 493 N.E.2d at 656.) Once the Department establishes its *prima facie* case, the burden is on the taxpayer to overcome this presumption of validity by producing competent evidence, identified by the taxpayer's

books and records, to show that the Department's returns are incorrect. (143 Ill. App. 3d at 612, 493 N.E.2d at 656.) Furthermore, because plaintiffs here are claiming an exemption from taxation, they must meet the burden stated in section 7 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 446): "It shall be presumed that all sales of tangible personal property are subject to tax under this Act until the contrary is established, and the burden of proving that a transaction is not taxable hereunder shall be upon the person who would be required to remit the tax to the Department if such transaction is taxable." Plaintiffs have the burden of proving clearly that their circumstances come within the exemption, because exemptions from taxation are to be strictly construed, and doubts concerning the application of the exemptions will be resolved in favor of taxation. *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455, 419 N.E.2d 899, 904.

Plaintiffs claim the use of the horses in question here was exempt from taxation under a retailers' occupation tax regulation which is incorporated by reference in the use tax regulations and which states:

> "Farmers or producers of breeding livestock are not liable for Retailers' Occupation Tax with respect to gross receipts realized from the sale of bulls, stallions or other servicing animals for breeding purposes." (86 Ill. Admin. Code 130.2100 (1985).)

The hearing officer determined this regulation exempted only farm animals and not racehorses, but also held that even if the regulation applied to horses not considered farm animals, the regulation would not exempt the horses in question here because they were used for racing and not exclusively for breeding. We need not address the hearing officer's conclusion that the regulation applies only to farm animals because we conclude plaintiffs have not met their burden of proving the horses in question were used for "breeding purposes."

 █ The Department's auditor determined through interviews with employees of plaintiffs' businesses that all of the horses taxed had been raced at least once. We believe this finding constituted a reasonable basis for taxing the use of the horses. The burden was then upon plaintiffs to prove the horses were used for breeding. A taxpayer cannot overcome the Department's *prima facie* case merely by denying the accuracy of the assessments, but must present evidence which is consistent, probable, and identified with its books and records. (*Central Furniture Mart, Inc. v. Johnson* (1987), 157 Ill. App. 3d 907, 911, 510 N.E.2d 937, 940.) Plaintiffs here failed to present evidence that these particular horses were used for breeding at all. Plaintiff Ronnie Graham only testified generally that the fami-

ly's "primary business focus" was breeding, and that racing is incidental to breeding. However, he did not testify that every horse which races becomes a breeder. Disease, injury or other reasons may prevent a proven racehorse from ever becoming a breeder. The retailers' occupation tax and the use tax are imposed at the time of sale and the tax-exempt character of the sale or use generally must be established at that time. (See *Allemed, Inc. v. Department of Revenue* (1981), 101 Ill. App. 3d 746, 751, 428 N.E.2d 714, 718.) When the horses were purchased by plaintiffs, it was in no way certain that they would ever become breeding animals. However, the evidence showed that plaintiffs intended to use them, at least for a while, for racing and that all of the horses did in fact race.

■ Plaintiffs have only presented evidence of a general nature about their businesses and have failed to present sufficient documentary support to overcome the Department's prima facie case. (See *Howard Worthington, Inc. v. Department of Revenue, Retail Occupation Tax Division* (1981), 96 Ill. App. 3d 1132, 1134-35, 421 N.E.2d 1030, 1032.) We therefore cannot say the Department's determination in this case was against the manifest weight of the evidence.

Plaintiffs attempt to bolster their argument that the use of these horses was exempt by pointing to an intra-Department memorandum dated March 8, 1972, written by Willard Ice, manager of the miscellaneous taxes group of the regulations hearings divisions, to Tracy Neese, manager of the audit division. A question posed by Neese was stated in the memorandum as follows:

"If a seller of horses sells a horse to a purchaser, who is going to use the horse either for racing or as a show horse, but who will also use this mare or stallion for breeding purposes, would the breeding stock exemption prevail?"

Ice replied:

"I would say that the breeding stock exemption prevails if breeding is the primary purpose for which the horse will be used, but not if it is only incidental to using the horse as a show horse or for racing purposes."

Assuming *arguendo* that this memorandum constitutes a policy which would bind the Department, plaintiffs still have not met their burden of overcoming the Department's *prima facie* case and of proving they come within the exemption. The memorandum would allow an exemption for a horse used *primarily* for breeding. As we have stated, plaintiffs failed to present documentary evidence of the breeding activity of the horses in question. Thus, even under the memorandum, plaintiffs have failed to meet their burden.

For these reasons, we affirm the portion of the judgment of the circuit court upholding the Department's final assessments as they relate to all of the horses other than Brett's Jet, which is the subject of the cross-appeal.

■ The Department in its cross-appeal contends the court erred when it reduced the final assessments by $675.84, which was the amount for the tax, interest and penalty related to the use of a horse named Brett's Jet. Ronnie Graham testified this horse was purchased in a claiming race, which is defined as a race in which any horse may be sold to an eligible person. (11 Ill. Admin. Code 501.10 (1985).) Auditor Gladson testified that he taxed the use of Brett's Jet, but would not have done so had he known it was purchased in a claiming race. He testified it was the Department's policy not to tax horses purchased in claiming races.

The Department argues the trial court erred when it eliminated the amount related to Brett's Jet, contending that even though the horse was purchased in a claiming race, the use of the horse should be taxed because there is no applicable exemption from taxation. Plaintiffs contend that the Department had a policy of exempting any horse purchased in a claiming race. They rely on the testimony of auditor Gladson, who stated that he had been told by the Department "to overlook" horses purchased at claiming races. Plaintiffs contend this demonstrated an established policy of the Department which could not be changed without notice.

We do not believe plaintiffs have adequately demonstrated the Department had a definitive policy regarding horses purchased in claiming races. Plaintiffs do not cite any regulation, written policy or decision of the Department on this matter. We do not believe the testimony of auditor Gladson alone was sufficient to prove the Department had a definitive policy which would bind the agency to act in a given manner. Nor did plaintiffs prove they came within any other exemption with regard to this particular horse. Consequently, the trial court should not have reversed the Department's assessment covering Brett's Jet.

We thus conclude the Department's assessments should not be disturbed in any manner. Therefore, the portion of the trial court's judgment eliminating the assessment related to Brett's Jet is reversed, and the judgment in all other respects is affirmed.

Affirmed in part and reversed in part.

KARNS, P.J., and WELCH, J., concur.