SACO INDUSTRIES, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendant-Appellee.

Third District   No. 3—97—0704

Opinion filed November 4, 1998.

Michael R. Lucas and Arthur Wilhelmi (argued), both of McKeown Law Office, of Joliet, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Royce A. White (argued), Assistant Attorney General, of counsel), for appellee.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Saco Industries appeals from a judgment of the circuit court affirming a final assessment imposed by the Illinois Department of Revenue (Department). The Department conducted an audit and determined that Saco failed to adhere to the Department's requirement that retailers show use tax separately from the selling price on its invoices. Pursuant to regulations, the Department disallowed a deduction Saco took on its tax returns and assessed taxes, penalty and interest against Saco in the amount of $10,832 for the audit period. After an administrative hearing, the Department issued a final assess-

ment of $11,365.10, which included penalties and interest. Saco filed a complaint for administrative review and the circuit court affirmed the final assessment and entered judgment against Saco for $12,450.30, including penalties and interest. Penalties and interest continue to accrue pending this review. On appeal, Saco alleges that the assessment of additional sales tax liability by the Department of Revenue was arbitrary and capricious.

Saco Industries manufactures and sells kitchen and vanity cabinets and deals primarily with construction contractors and subcontractors. Saco sometimes installs its products, with installation comprising approximately 25% of its gross sales.

The Department of Revenue conducted an audit of Saco's bookkeeping for the period of July 1, 1990, through December 31, 1992. The auditor examined Saco's sales and use tax returns, cash receipts journals, sales invoices and sales contracts. The auditor concluded that the sales invoices which Saco issued to its customers did not show use tax separately from the selling price. In addition, the auditor concluded that although Saco's internal records did state use tax separately, the records were not an accurate indication of Saco's tax liability because the tax was a forced figure. Saco simply took its total receipts and divided by the tax rate to arrive at the amount of use tax.

Saco's vice president of operations, William Robinson, testified that Saco's role as subcontractor made it impractical and more costly to include the correct amount of tax on each invoice. On a typical sale, Saco's product is delivered as it is manufactured, which means multiple deliveries on the same contract. Robinson explained that when the product is delivered, it is accompanied by a shipment invoice which details the cost and description of the materials included in that shipment. Then, on a regular basis, Saco applies for payment from the construction escrow account and includes its shipment invoices as backup for the amount requested. Saco's request for payment is then approved by the controlling authority on the construction project based on a percentage of completion of the job. Saco maintained that when it sent out its request for payment, it did not know what percentage of completion would be assigned nor how much of the requested amount would be authorized for payment. For this reason, Saco did not state on each shipment invoice the correct amount of tax it would ultimately collect on that invoice.

Unpersuaded by Saco's argument, the administrative law judge found that Saco was able to separately state the use tax on its invoices. In fact, at the time of the hearing, Saco had adopted new bookkeeping procedures and was preparing its invoices with the taxes stated separately from the price of its products. The administrative law judge

recommended that the Department issue a final notice of tax liability, which was issued against Saco in the amount of $11,365.10, including penalties and interest.

Saco filed a complaint for administrative review in the circuit court of Will County. After conducting a hearing, the court affirmed the final assessment and entered judgment against Saco for $12,450.30, including penalties and interest.

On appeal, Saco alleges that the decision of the Department of Revenue is against the manifest weight of the evidence and asserts that the Department acted in an arbitrary and capricious manner in assessing additional tax liability. Specifically, Saco contends that it should not be punished for failure to comply with Department regulations because (1) it complied with Illinois law, and (2) complying with Department regulations could cause Saco to violate Illinois law. Saco also contends that the Department (3) failed to state a *prima facie* case, and (4) should be estopped from assessing additional tax liability since Saco's procedures were previously approved by the Department's auditor.

█ It is well established that the findings and conclusions of an administrative agency are *prima facie* true and correct and will not be disturbed on appeal unless they are against the manifest weight of the evidence (*Walsh v. State Property Tax Appeal Board*, 286 Ill. App. 3d 895, 677 N.E.2d 489 (1997), *aff'd*, 181 Ill. 2d 228 (1998)), or where the record indicates that the agency has acted in an arbitrary or capricious manner. *Pierce v. Board of Trustees of the Police Pension Fund*, 177 Ill. App. 3d 915, 532 N.E.2d 1004 (1988).

█ At issue here is the Department's disallowance of a use tax deduction against the tax owed by Saco under the Retailers' Occupation Tax Act (the Act) (35 ILCS 120/1 *et seq.* (West 1996)). Under the Act, a retailer must pay tax for the privilege of selling within Illinois. 35 ILCS 120/1 *et seq.* (West 1996). The Act imposes a tax based on a percentage of the retailer's gross receipts from the sales of tangible personal property. 35 ILCS 120/2—10 (West 1996). Gross receipts include the total selling price, but do not include amounts a retailer collects under the Use Tax Act (35 ILCS 105/1 *et seq.* (West 1996)). 35 ILCS 120/1 (West 1996).

█ The Use Tax Act (35 ILCS 105/1 *et seq.* (West 1996)) imposes a tax for the privilege of using personal property within Illinois. The Use Tax Act was enacted to prevent the evasion of tax on purchases made outside Illinois and brought into Illinois, and to equalize the competitive disadvantage of Illinois retailers who must pay tax under the Act. *United Air Lines, Inc. v. Johnson*, 84 Ill. 2d 446, 419 N.E.2d 899 (1981). The Use Tax Act relieves Illinois retailers who collect use

tax on a transaction from paying retailers' occupation tax on that transaction. *United Air Lines*, 84 Ill. 2d 446, 419 N.E.2d 899. In other words, a retailer may reduce its liability under the Retailers' Occupation Tax Act by the amount of use taxes it collected.

■ When collecting use tax, the Illinois Use Tax Act provides that the retailer must state the use tax amount "as a distinct item separate and apart from the selling price." 35 ILCS 105/3a (West 1996). In addition, the Department's Use Tax Regulations provide in relevant part as follows:

"(a) If a retailer is required or authorized to collect the Use Tax, his records must show that he *** states such tax separately to the purchaser from the selling price of the tangible personal property which he is selling, unless the Department finds that it is not possible, under the facts of the case, for the retailer to collect the tax from the purchaser as a separate item from the selling price.

(b) The retailer can prove compliance with the requirement of stating the Use Tax as a separate item from the selling price by showing the tax separately on invoices or sales tickets that are issued to his customers ***." 86 Ill. Adm. Code § 150.1305 (1996).

If a retailer fails to prove compliance in this manner, it loses the benefit of taking a deduction on its tax retailer's occupation tax return for the use taxes collected. 86 Ill. Adm. Code § 150.1315 (1996).

■ A straightforward application of the regulations indicates that the Department properly disallowed Saco's claimed deduction for use taxes collected. The Department auditor testified that Saco did not state use tax separately from the selling price on any of the invoices that were issued to its customers and Saco conceded as much.

Saco, however, disregards its failure to comply with Department regulations and contends that it is sufficient to comply with Illinois law. Saco cites *Sunnyland Cabinet & Millwork, Inc. v. Department of Revenue*, 52 Ill. App. 3d 25, 362 N.E.2d 1367 (1977), for the proposition that a taxpayer who can establish that all taxes due were collected and remitted cannot be assessed an additional liability for failure to comply with the regulations. Saco argues that its internal records properly show use tax as a separate item and that its compliance with the statute requires that the regulation "give way."

Saco's reliance on *Sunnyland* is misplaced. In that case, we held that a taxpayer's noncompliance with the regulation raised a rebuttable presumption that the tax was not separately stated and not collected from the customer. If the taxpayer can overcome the presumption with evidence of compliance, then the Department is prohibited from assessing additional tax for failure to comply with the regulations. In *Sunnyland*, the taxpayer introduced evidence of its business

procedures and established that all taxes due were in fact separately and correctly stated, collected and remitted.

Here, in order to establish that it collected and remitted all taxes, Saco relies on the auditor's testimony that Saco's internal records "did break down sales price and taxes attributed thereto." However, Saco's selective use of the auditor's testimony is disingenuous and misleading. Although the auditor did testify that Saco's internal records separated tax from the sales price, the auditor also testified that these records were in error "[b]ecause the tax was a forced figure after taking total receipts and dividing by the tax rate." Unlike the taxpayer in *Sunnyland*, Saco was unable to show the auditor any records where the tax was separately and correctly stated. Saco thus failed to present sufficient evidence to overcome the presumption of noncompliance. We find that the Department's assessment of additional tax liability is consistent with the manifest weight of the evidence. Furthermore, we find no evidence that the Department acted in an arbitrary or capricious manner.

■ Saco next contends that it should not be punished for failure to comply with Department regulations because such compliance could cause Saco to violate Illinois law. This argument is without merit and we dismiss it with no further discussion.

■ Saco also contends that the Department failed to state a *prima facie* case because the corrected return was not an original and the copies failed to include a certification of authenticity as required by the Act. 35 ILCS 120/4 (West 1996). A corrected return prepared by the Department is deemed *prima facie* correct. *Central Furniture Mart, Inc. v. Johnson*, 157 Ill. App. 3d 907, 510 N.E.2d 937 (1987). The Department successfully establishes a *prima facie* case simply by submitting the corrected return into evidence. *Central Furniture Mart*, 157 Ill. App. 3d 907, 510 N.E.2d 937. If the corrected return is challenged, the Department must show that its method of preparing the return is reasonable. *Central Furniture Mart*, 157 Ill. App. 3d 907, 510 N.E.2d 937.

■ A review of the record reveals that the Department submitted a corrected return into evidence, which Saco did not challenge. The administrative law judge stated that the document submitted into evidence was entitled, "Correction and/or Determination of Tax Due for State Retailer's Occupation Tax," and that it was signed by the Director of the Department of Revenue. Saco raised no objections to admitting the corrected return into evidence and did not contest the authenticity of the corrected return. Based on the record, we find that the Department established a *prima facie* case and dismiss Saco's argument on this issue.

Finally, Saco argues that the Department should be estopped from assessing additional tax liability since Saco's procedures were previously approved by the Department's auditor.

■ Where public revenues are involved, courts are reluctant to apply the doctrine of estoppel against the State unless compelling or extraordinary circumstances are present. *Communications & Cable of Chicago, Inc. v. Department of Revenue*, 275 Ill. App. 3d 680, 688, 655 N.E.2d 1078, 1084 (1995). It is well established that the State is not estopped by the mistakes or misinformation given by the Department's employees with respect to tax liabilities. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 665 N.E.2d 795 (1996). Nor is the government estopped "by previous acts or conduct of its agents regarding the determination of tax liabilities or failure to collect a tax." *Communications & Cable of Chicago*, 275 Ill. App. 3d at 688, 655 N.E.2d at 1084. Estoppel would only operate against the State to prevent fraud and injustice. *Brown's Furniture*, 171 Ill. 2d 410, 665 N.E.2d 795.

■ Even assuming that a Department auditor gave Saco incorrect information, erroneously approved Saco's procedures, or failed to assess a tax liability at the time of the prior audit in 1989, Saco's argument cannot stand. The facts of this case do not present any compelling or extraordinary circumstances to warrant reversal of the Department's assessment of additional taxes. Absent fraud or injustice, the Department is not estopped from asserting its claim against Saco.

For the reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN and KOEHLER, JJ., concur.