(No. 59162.—

TRI-AMERICA OIL COMPANY, Appellant, v. THE DE-PARTMENT OF REVENUE *et al.*, Appellees.

*Opinion filed May 25, 1984.*

Berkson, Gorov & Levin, Ltd., of Chicago (Arthur M. Gorov and Norman N. Berkson, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Kathleen M. Lien, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Tri-America Oil Company, is both a wholesale and retail seller of gasoline. It owns and operates three gas stations from which it sells gasoline to the general public at retail. During the period in question here, January 1975 through December 1977, it also owned 20 to 25 other stations which it leased to independent dealers who purchased gasoline at wholesale from Tri-America and resold the gasoline at the leased stations at retail for use and consumption by the public.

Tri-America did not pay taxes under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 440 *et seq.*) and the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 24, par. 8—11—1) on sales to any of the leased stations. It claimed that these were exempt from the taxing statutes as sales for resale and not sales for use and consumption. During an audit by the Department of Revenue, Tri-America produced proper resale or registration numbers issued by the Department for all but one station in Chicago. The exception was a station leased from Tri-America and operated by Miguel and Alfonso Chavez (Chavez). Chavez neither applied for nor received a resale tax number from the Department of Revenue, and it is clear that no taxes have been paid on the gasoline which Tri-America sold to the station operated by Chavez.

The Department made an administrative determination assessing unpaid taxes, interest and penalties under

the above statutes against Tri-America on sales it made to Chavez. This determination was set aside by the circuit court of Cook County in a proceeding for administrative review filed by Tri-America. The decision of that court was in turn reversed by the appellate court (117 Ill. App. 3d 774). We granted Tri-America leave to appeal to this court (87 Ill. 2d R. 315).

Section 1 of the Retailers' Occupation Tax Act provides in pertinent part:

> " 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale in any form \*\*\*.
>
> *'Sale at retail' shall be construed to include any transfer \*\*\* for resale in any form as tangible personal property unless made in compliance with Section 2c of this Act.*
> \* \* \*
>
> The isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as being engaged (or who does not habitually engage) in selling such tangible personal property at retail \*\*\* does not constitute engaging in a business of selling such tangible personal property at retail within the meaning of this Act; \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 440.)

The Act further provides in section 2c:

> "If the purchaser is not registered with the Department as a taxpayer, but claims to be a reseller of the tangible personal property in such a way that such resales are not taxable under this Act \*\*\* such purchaser \*\*\* shall apply to the Department for a resale number. \*\*\*
>
> Upon approval of the application, the Department shall assign a resale number to the applicant \*\*\*.
> \*\*\*
>
> *Except as provided hereinabove in this Section,* no sale shall be made tax-free on the ground of being a sale for resale unless *the purchaser has an active registration*

*number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable* because of being a sale for resale." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 441c.

The questions raised by this appeal are: Is Tri-America exempt from retailers' occupation taxes under the holding of this court in *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, and *Illinois Cereal Mills, Inc. v. Department of Revenue* (1983), 99 Ill. 2d 9? If not, can Tri-America avoid the assessment by demonstrating that the sales it made to Chavez were sales for resale at his gas station even though Chavez did not furnish Tri-America with any registration number or resale number issued by the Department to certify to Tri-America that its sales to Chavez were for resale?

The taxing statutes are designed to prevent retailers who are not registered with the Department from purchasing products from wholesalers. The registration or resale number issued by the Department is required in order to assure the wholesaler that the business to which he sells is properly registered with the Department, which can then look to the retailer to collect and pay the tax required on retail sales. If a wholesaler fails to cooperate with this collection scheme by selling his product to a retailer without requiring proof under section 1 of a registration or a resale number, the wholesaler may expose himself to payment of the taxes the retailer incurred for sales at retail.

In *Dearborn Wholesale Grocers* this court held that section 2c did not apply to those who sell exclusively at wholesale. The evidence there nevertheless showed that registration numbers or sales numbers assigned to the seller's customers had been furnished to the seller by each customer, although the seller was unable to locate them at the time the audit took place. In this case, of course, no number could have been furnished by Chavez to Tri-America

because he had received none. In *Illinois Cereal Mills* we extended the *Dearborn Wholesale Grocers* exception to a wholesale seller who made only casual or isolated retail sales as an accommodation to its regular customers. The sales in that case were made to foster good will on the part of customers, and they accounted for only a minute portion of the total sales made by Illinois Cereal Mills.

In contrast, Tri-America holds itself out to the public as a retailer by operating three gasoline stations as retail businesses, and in addition its sales to Chavez were neither isolated nor occasional but were steady and substantial. Tri-America is engaged in the business of selling tangible personal property at both wholesale and retail, and therefore the provisions of the Retailers' Occupation Tax Act, including section 2c, are applicable to it and require it to obtain a resale tax certificate number from purchasers who purportedly intend to resell the product they purchase. If a purchaser does not have a resale number and therefore cannot comply with the requirements of section 2c by certifying to the seller who is operating as both a wholesaler and retailer that the sale is nontaxable for purposes of the Act, that sale is to be treated as a retail sale.

Tri-America argues that its situation is logically indistinguishable from that of the sellers in *Dearborn Wholesale Grocers* and in *Illinois Cereal Mills*. To the contrary, the factual distinction based on Tri-America's activity as both a wholesaler and retailer is directly related to the purpose of the statute. In *Dearborn Wholesale Grocers* this court declared that section 2c was not applicable to sellers who demonstrate that they sell exclusively at wholesale, and we restated that position in *Illinois Cereal Mills*. Similarly, section 2c, allowing the retail seller to avoid tax on sales for resale, is irrelevant to the exclusive retail seller; he will never have any need to provide certificates since he never makes any sales for resale. It is only in a case like the one presented here where the seller deals both at wholesale

and retail that section 2c can have any application. It is precisely in the context in which some sales of a particular business are taxable and some are not, and the retail sales made by the business are not a minimal amount as in *Illinois Cereal Mills*, that documentation is required to separate the retail and wholesale sales and to insure that the State collects all the revenue which is legitimately due.

Tri-America also argues that even if it is a retailer under the Act and must comply with section 2c, under section 4 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 443) failure to produce a resale certificate only raises a presumption that these were taxable retail sales. Since it is undisputed that Chavez resold the gasoline, Tri-America argues that it has successfully rebutted the presumption. That argument misreads both section 4 and the decisions in *Dearborn Wholesale Grocers* and *Illinois Cereal Mills*. Section 4 of the Act states only that the "return so corrected *** shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due." (Ill. Rev. Stat. 1975, ch. 120, par. 443.) Section 2c, on the other hand, provides a method whereby a seller can avoid paying a retailers' occupation tax on sales it makes to others, sales which might otherwise be taxable as retail sales even though they may not in fact be retail sales. The presumption raised by section 4 is thus not that a given sale is a sale at retail, but is rather that tax is due in the amount indicated by the Department. The presumption is rebutted, not by evidence that certain sales were made for resale, but either by a showing of compliance with section 2c or by a showing that section 2c does not apply. Although the plaintiff in *Illinois Cereal Mills*, as here, argued about the nature of the sale, what we said in that case was: "Certainly if section 2c, with its documentation requirements, was not applicable, the plaintiff's evidence was clearly sufficient to rebut the Department's *prima facie* case." (99 Ill. 2d 9, 16.) We held that section 2c did not

apply to *Illinois Cereal Mills* because of the minute portion of its total sales that were at retail (99 Ill. 2d 9, 18-19). Here, on the other hand, Tri-America regularly operated three gasoline stations which sold at retail to the general public, and neither Tri-America's sales at retail nor its sales to Chavez were insignificant in amount or irregular in frequency. We conclude, therefore, that section 2c applies to whatever sales Tri-America made to Chavez, and that it cannot avoid paying the retailers' occupation tax on those sales because it has failed to demonstrate that it obtained a registration number or sales number assigned to Chavez by the Department of Revenue or that Chavez paid any tax on sales of gasoline he purchased from Tri-America.

Since the Municipal Retailers' Occupation Tax Act incorporates by reference (Ill. Rev. Stat. 1975, ch. 24, par. 8—11—1) all the relevant sections of the Retailers' Occupation Tax Act, our holding with respect to the latter act is also applicable to the municipal tax. *Illinois Cereal Mills v. Department of Revenue* (1983), 99 Ill. 2d 9, 12.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*