ELKAY MANUFACTURING COMPANY, Plaintiff-Appellant, v. ROGER D. SWEET, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (1st Division)  No. 1—89—2251

Opinion filed August 27, 1990.

Martin, Craig, Chester & Sonnenschein, of Chicago (Thomas H. Donohoe, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This action arises from the circuit court's affirmance on administrative review of the decision of the Illinois Department of Revenue (the Department) assessing Elkay Manufacturing Company (plaintiff) a $62,016.21 tax deficiency on certain sales under the Municipal Retailers' Occupation Tax Act (MROT Act) (Ill. Rev. Stat. 1987, ch. 24, par. 8—11—1) and the Regional Transportation Authority Retailers' Occupation Tax Act (RTA Act) (Ill. Rev. Stat. 1987, ch. 111²/₃, par. 704.03(e)). Plaintiff appeals from the circuit court's ruling, contending that (1) the retail sales tax acts do not apply to plaintiff's wholesale business, and (2) the administrative ruling that plaintiff's sales are taxable as retail sales is against the manifest weight of evidence. We affirm.

In late 1984 and early 1985, the Department conducted an audit of plaintiff, an Illinois corporation which manufactures stainless steel sinks, water coolers, and faucets. As a result of the audit, the Department determined that plaintiff had not paid taxes for the period January 1, 1981, through December 31, 1984, under the MROT and RTA Acts on certain sales of water coolers made to Hinckley & Schmitt.[1]

At the administrative hearing on the deficiency, the Department introduced into evidence its "Correction of Returns or Determination of Tax Due," indicating plaintiff's MROT and RTA deficiencies on sales to Hinckley & Schmitt. Lucy Knight, a senior auditor for the Department, testified that after examining plaintiff's books and records, she prepared a "Summary Analysis of Tax Liability" as to the deficiencies. Knight concluded that the sales were taxable as retail sales, as opposed to nontaxable purchases for resale, from an October 28, 1976, letter she found when examining the books in October 1984. This letter, signed by David Chelnick, Hinckley & Schmitt's controller, stated that Hinckley & Schmitt had paid "use tax *** on all coolers purchased from [plaintiff]."

Knight further testified that she informed plaintiff of the letter in September 1985, after which plaintiff sent a blanket resale certificate to Hinckley & Schmitt. Knight testified that, upon observing the returned resale certificate bearing the signature of Chelnick, she informed plaintiff that she would not accept the certificate due to her

---

[1]Plaintiff acknowledged at oral argument before this court that the Department did not assess a tax under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 440) because Hinckley & Schmitt had paid a use tax with respect to these sales. See Ill. Rev. Stat. 1987, ch. 120, par. 439.1 *et seq.*

belief that the sales were not made in good faith since plaintiff had the 1976 letter already in its possession at the time of the sales. Knight stated, over objection, that she telephoned Chelnick after plaintiff had expressed opposition to her position. Chelnick informed her that Hinckley & Schmitt did not resell the water coolers but leased them, that they continued to pay use tax on the water coolers, and that he "would never sign" a resale certificate as to the coolers in issue.

Edward J. Styka, the attorney representing plaintiff, introduced into evidence exhibits on behalf of plaintiff and made certain representations regarding the exhibits. Styka represented that plaintiff obtained from Hinckley & Schmitt a letter, dated December 10, 1976, containing their sales tax number and, on May 30, 1985, an undated resale certificate. Styka also tendered an exhibit he prepared summarizing for the audit years plaintiff's total sales and total reported taxable sales, excluding the sales to Hinckley & Schmitt, to support his argument that plaintiff was a wholesaler not subject to retail tax. The summary indicated that plaintiff's taxable (retail) sales represented less than .10% of plaintiff's total annual sales.

In rebuttal, Knight testified that included in Styka's nontaxable sales figures were sales from their out-of-State subsidiaries which could have been retail sales but would not have been taxable in Illinois. Glennon Taylor, an audit supervisor for the Department, testified that the return reporting plaintiff's taxable and gross receipts, from which Styka had made his analysis, included interstate commerce sales as part of the gross receipts. Taylor estimated, under an analysis computing the percentage of taxable receipts to the total wholesale sales, that the percentage of taxable sales more closely approximated 1% of the total sales.

At the close of the hearing, the administrative law judge (ALJ) found plaintiff to be liable for the MROT and RTA tax deficiencies claimed by the Department. The ALJ found that the sales in issue were not nontaxable resale sales but taxable sales to an end user. The ALJ stated that the best evidence of such was the October 28, 1976, letter, and that Hinckley & Schmitt did not execute a valid resale certificate. The circuit court, in affirming the Department's decision, found that the Department's determination as to plaintiff's liability was not against the manifest weight of the evidence and that the MROT and RTA Acts applied to plaintiff's sales to Hinckley & Schmitt.

In reviewing plaintiff's claim on appeal of the circuit court's ruling, we need only consider the Retailer's Occupation Tax Act (the

ROT Act) (Ill. Rev. Stat. 1987, ch. 120, par. 440 *et seq.*) because the MROT and RTA Acts incorporate by reference the pertinent provisions of the ROT Act. (See *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 478, 413 N.E.2d 370, 371.) The ROT Act is entitled "An Act in relation to a tax upon persons engaged in the business of selling tangible personal property." (Ill. Rev. Stat. 1987, ch. 120, par. 440.) Its provisions impose a tax upon persons "engaged in the business of selling tangible personal property at retail." Ill. Rev. Stat. 1987, ch. 120, par. 441.

■ We will consider first plaintiff's contention that the Department's decision that plaintiff's sales to Hinckley & Schmitt are taxable retail sales is against the manifest weight of the evidence. In reviewing the evidence offered at the administrative hearing, we are directed by the following established law. The Department's corrected return is deemed to be *prima facie* evidence of the correctness of the amount of tax due (Ill. Rev. Stat. 1987, ch. 120, par. 443), and its *prima facie* case is established by simply submitting the corrected return into evidence at the hearing (*Central Furniture Mart, Inc. v. Johnson* (1987), 157 Ill. App. 3d 907, 910, 510 N.E.2d 937, 939). Where a corrected return is challenged, the record must only demonstrate that the department's method of preparing the corrected return meets some minimum standard of reasonableness. (*Central Furniture*, 157 Ill. App. 3d at 910, 510 N.E.2d at 939; *Smith v. Department of Revenue* (1986), 143 Ill. App. 3d 607, 611, 493 N.E.2d 653, 656; *Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 266, 453 N.E.2d 48, 52.) Once a *prima facie* case has been established, the taxpayer thereupon bears the burden of overcoming this evidence by showing the transaction to be nontaxable. *Illinois Cereal Mills, Inc. v. Department of Revenue* (1983), 99 Ill. 2d 9, 16, 457 N.E.2d 385, 388; *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455, 419 N.E.2d 899, 904; *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 1134, 421 N.E.2d 1030, 1032.

■ In the case at bar, the Department submitted at the administrative hearing the corrected return made by its auditor indicating that plaintiff had failed to pay taxes on retail sales of water coolers made to Hinckley & Schmitt. The record does not demonstrate that the auditor's methods failed to meet a minimum standard of reasonableness. The auditor testified that, after inspecting plaintiff's books and records, she concluded that the sales in issue were retail sales from a 1976 letter signed by Hinckley & Schmitt's controller which indicated that Hinckley & Schmitt had paid use tax to the State on all

of the coolers it purchased from plaintiff.[2] The auditor testified that she rejected a resale certificate subsequently procured by plaintiff in 1985 because the 1976 letter had been in plaintiff's possession at the time of the sales and because, upon her inquiry, Hinckley & Schmitt's controller stated that he would never sign a resale certificate as to the coolers and reaffirmed that Hinckley & Schmitt continued to pay use tax on the coolers.[3] Because the record does not demonstrate that the methods employed by the auditor were unreasonable, it is evident that the Department established its *prima facie* case. It was then incumbent upon plaintiff to overcome the Department's *prima facie* case.

■ Before looking to the evidence offered by plaintiff to overcome the Department's *prima facie* case, we will address two issues raised by plaintiff which may be pertinent to our analysis. Plaintiff first argues that it was fundamentally unfair that the ALJ ruled that plaintiff did not have a valid resale certificate when in the presentation of the Department's *prima facie* case it presented the theory that a valid resale certificate had not been taken in good faith. Plaintiff misplaces its reliance on the principle set forth in *A.R. Barnes & Co. v. Department of Revenue* (1988), 173 Ill. App. 3d 826, 527 N.E.2d 1048, and *Cartwright v. Illinois Civil Service Comm'n* (1980), 80 Ill. App. 3d 787, 400 N.E.2d 581. These cases stand for the proposition that a charge before an administrative agency must reasonably apprise a respondent of the charges so that he can intelligently prepare his defense. As our previous discussion demonstrates, the auditor's testimony as to the resale certificate did not comprise "the Department's theory." The ROT Act, by allowing the corrected return to be *prima facie* proof of the correctness of the amount due, places the burden upon the taxpayer to come forward with any evidence it has to prove the sales were nontaxable, which would include evidence that the sales were not retail sales. Thus, plaintiff cannot claim surprise here.

---

[2]The ROT Act has a complimentary act, the Use Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 439.1 *et seq.*), which taxes a purchaser's privilege of using personal property within Illinois. Its purpose is to prevent "the evasion of tax on purchases made outside the State and to equalize the competitive disadvantage of Illinois retailers who face retailers' occupation tax liability." *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 450, 419 N.E.2d 899, 901; see also *Turner v. Wright* (1957), 11 Ill. 2d 161, 142 N.E.2d 84.

[3]We acknowledge plaintiff's objection to the introduction of the auditor's conversations with the controller at the administrative hearing on hearsay grounds. This testimony is set forth here, not for purposes of the truth of the matter asserted, but to show the methods employed by the auditor in reaching her determination.

Plaintiff also argues that the Department improperly relied on hearsay evidence of the auditor's conversation with Hinckley & Schmitt's controller regarding the resale certificate. Because the Department has conceded on appeal that the controller's statements as testified to by the auditor would be inadmissible hearsay if admitted for their truth, we will not consider these statements in reviewing whether plaintiff overcame the Department's *prima facie* case.

■ To overcome the Department's *prima facie* case, a taxpayer must present more than its testimony denying the accuracy of the assessments, but must present sufficient documentary support for its assertions. (*Central*, 157 Ill. App. 3d at 911, 510 N.E.2d at 940; *Smith*, 143 Ill. App. 3d at 613, 493 N.E.2d at 656.) Plaintiff submitted two documents which it claims establish the sales are nontaxable resale sales under section 2c of the ROT Act, which provides, in pertinent part:

"[A] sale shall be made tax-free on the ground of being a sale for resale if the purchaser has an active registration number or resale number *** and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." (Ill. Rev. Stat. 1987, ch. 120, par. 441c.)

Plaintiff asserts that the December 10, 1976, letter from Hinckley & Schmitt meets the literal terms of this provision. This letter, in its entirety, states, "Our state of Illinois sales tax number is 011—691." Section 2c, however, requires the purchaser to furnish the number *in connection with certifying that any sale is nontaxable* as a resale. Because the letter does not indicate that the number is being furnished for purposes of any sales, it does not comply with section 2c.

■ Plaintiff claims that the second document, which bears Hinckley & Schmitt's resale number, is a "resale certificate" given to plaintiff by Hinckley & Schmitt. Provided the certificate is correct, "the Department will accept Certificates of Resale as *prima facie* proof that sales covered thereby were made for resale." (86 Ill. Adm. Code §130.1405(b) (1985).) The certificate of resale must "bear the seller's name and address, the name and address of the purchaser, the date when such certificate was signed by the purchaser, a sufficient identification of the property sold for resale to the purchaser, and the purchaser's registration number or resale number with the Department." 86 Ill. Adm. Code §130.1410(g) (1985).

The document does not meet the above statutory requirements to be a valid certificate of resale. Not only is the certificate itself not signed, it does not include any description whatsoever of the pur-

chased property. Plaintiff, though, argues that the document qualifies as a "blanket resale certificate," which does not require a description of the specific property since the buyer states that all of its purchases are for resale. See 86 Ill. Adm. Code §130.1420 (1985).

In examining this document, we cannot conclude that Hinckley & Schmitt is representing that all of its purchases are for resale. Plaintiff forwarded Hinckley & Schmitt a form containing blank spaces to be filled in by the customer. The lower portion of the document completed by an employee from Hinckley & Schmitt does not indicate that all the purchases from plaintiff are for resale. The upper portion of the document states the following:

"TO ALL ELKAY CUSTOMERS DOING BUSINESS IN THE STATE OF ILLINOIS The Illinois Retailers' Occupation Tax Act (See Below*) *requires us to have a current certificate of your registration or resale number* for our files. This will cover purchases from us that are for resale. Will you please complete and return the form below or send us a copy of your resale certificate? A self-addressed envelope is enclosed for your convenience."

In view of the ambiguity in the document as to whether Hinckley & Schmitt is representing that all of its purchases are for resale and in light of the 1976 letter indicating that Hinckley & Schmitt had made retail purchases from plaintiff, a finding that the document did not qualify as a valid blanket resale certificate is not against the manifest weight of the evidence.

Accordingly, the documentary evidence submitted by plaintiff at the hearing was not sufficient to overcome the Department's *prima facie* case. The administrative decision that plaintiff's sales to Hinckley & Schmitt were taxable retail sales, therefore, is not against the manifest weight of the evidence.

■ Plaintiff next contends that, even if the sales are retail sales, the ROT Act does not apply to its business. Citing the often-stated proposition that the ROT Act subjects to tax, not the sale of property, but the business of selling property for use or consumption (*Fefferman v. Marohn* (1951), 408 Ill. 542, 545-46, 97 N.E.2d 785, 787; *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 65, 108 N.E.2d 8, 14; *Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 426, 189 N.E.2d 333, 336), plaintiff argues that, as a wholesaler whose retail sales comprise a minute portion of its total sales, it is not subject to the ROT Act's tax upon the business or occupation of selling at retail, even on its retail sales.

Plaintiff argues that its position is a logical extension of the su-

preme court decisions in *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 413 N.E.2d 370, and *Illinois Cereal Mills, Inc. v. Department of Revenue* (1983), 99 Ill. 2d 9, 457 N.E.2d 385. In *Dearborn* and *Cereal Mills*, the court found that the application of section 2c's document verification requirements for resales[4] to impose a tax on a wholesaler's *nonretail* sales would unconstitutionally extend the ROT Act to wholesalers. (See Ill. Const. 1970, art. 4, §13; *International Business Machines Corp. v. Department of Revenue* (1962), 25 Ill. 2d 503, 185 N.E.2d 257.) To avoid this constitutional deformity, the court construed section 2c's document verification provision to apply only to retailers. In *Dearborn*, the sales to which section 2c was sought to be applied admittedly were resales and the unchallenged evidence indicated that all of the plaintiff's sales were for resale. In *Cereal Mills*, the questioned sales were acknowledged to be for resale, but the plaintiff had also made a minute portion of its total sales at retail for which it had voluntarily paid retail taxes. The court refused to distinguish *Dearborn* on the basis of the retail sales, stating that it could not be realistically said from the plaintiff's retail sales that it was engaged in the business of selling at retail. *Cereal Mills*, 99 Ill. 2d at 16-17, 457 N.E.2d at 388-89.

It is unnecessary for the resolution of this case to determine whether it follows from *Cereal Mills* that retail sales as therein described are not subject to the ROT Act because plaintiff has not demonstrated that its retail sales fit within the parameters of *Cereal Mills* and its progeny. The Department's corrected return as to the amount of tax due implicitly found that the plaintiff was engaged in the retail business and is *prima facie* evidence of such. (See *Howard*, 96 Ill. App. 3d at 1134-35, 421 N.E.2d at 1032.) It was then plaintiff's burden to overcome the *prima facie* evidence by showing that it was not

---

[4]Section 2c as in effect at the time, provided in pertinent part:

"Except as provided hereinabove in this Section, no sale shall be made tax-free on the ground of being a sale for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale." (Ill. Rev. Stat. 1979, ch. 120, par. 441c.)

As amended in 1984, section 2c provided in pertinent part:

"Failure to present an active registration number or resale number and a certification to the seller that a sale is for resale creates a presumption that a sale is not for resale. This presumption may be rebutted by other evidence that all of the seller's sales are sale for resale, or that a particular sale is a sale for resale. " Pub. Act 83—1463, eff. September 19, 1984 (amending Ill. Rev. Stat. 1979, ch. 120, par. 441c).

engaged in the retail business.

Plaintiff's evidence indicated that its retail sales represented less than .1% of its total annual sales, although rebuttal evidence indicated that plaintiff's retail sales more closely approximated 1% of its total sales. Plaintiff points out that its retail sales, under either of these figures, comprise the same or a smaller percentage of retail sales for which the plaintiff in *Cereal Mills* was found not to be engaged in the retail business. Nonetheless, supreme court case law indicates that the inquiry into whether a business is engaged in the business of retail is not limited to consideration of the percentage of retail sales made by the business.

The court in *Cereal Mills* noted that the small percentage of retail sales, consisting of less than 1% of its sales, were made from accommodation and good-will motives. In *Tri-America Oil Co. v. Department of Revenue* (1984), 102 Ill. 2d 234, 464 N.E.2d 1076, a case decided a short time after *Cereal Mills*, the court explained that *Cereal Mills* "extended the *[Dearborn]* exception to a wholesale seller who made only casual or isolated retail sales as an accommodation to *its regular customers*. The sales in that case were made to foster good will on the part of *customers*, and they accounted for only a minute portion of the total sales made by *[Cereal Mills]*." (Emphasis added.) (*Tri-America*, 102 Ill. 2d at 239, 464 N.E.2d at 1078.) The court distinguished *Cereal Mills* from the situation before it, where the plaintiff, who leased over 20 gasoline stations on a nonretail basis to independent dealers, also made regular gasoline sales to the general public at three stations. It found that the plaintiff held itself out to the public as a retailer by operating the three stations as a retail business and that the questioned sales were neither insignificant in amount nor irregular in frequency. *Tri-America*, 102 Ill. 2d at 239, 241, 464 N.E.2d at 1078-79.

*Tri-America* controls the instant case. Unlike *Cereal Mills*, where the purpose of the retail sales was to accommodate its regular wholesale customers, plaintiff presented no evidence that Hinckley & Schmitt was a regular wholesale customer or that the retail sales were infrequent and made solely for accommodation purposes. Nor did plaintiff present any evidence that any of the retail sales cited in the summary were so made. In fact, plaintiff's attorney admitted at the administrative hearing that the questioned sales involve "all [plaintiff's] products sold to Hinckley & Schmitt." Without any evidence to the contrary, it can only be concluded that plaintiff held itself out to its retail customers as a retailer by selling its products on a regular, retail basis. Thus, even assuming *arguendo* that the reasoning in

476

*Dearborn* and *Cereal Mills* would extend to the situation at hand, plaintiff has not demonstrated that it was not engaged in the business of retail selling.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.