SOHO CLUB, INC., d/b/a Cabana Club, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (5th Division)   No. 1—92—3399

Opinion filed January 20, 1995.

Michael Null & Associates, of Chicago (Michael Null and Reed Lee, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Susan Frederick Rhodes, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On August 25, 1992, the trial court entered a decision and judgment order affirming the decision of an administrative law judge (ALJ) who determined that: (1) plaintiff, Soho Club, Inc., was subject to the Illinois Retailer's Occupation Tax Act (ROT Act) (35 ILCS 120/1 *et seq.* (West 1992)) for the tax years 1986 and 1987, and (2) plaintiff had not successfully rebutted defendant's, Illinois Department of Revenue's, *prima facie* case determining that plaintiff was subject to the ROT Act and that such taxes were owed by plaintiff for the tax years of 1986 and 1987. On appeal, plaintiff contends that the trial court erred in: (1) affirming the ALJ's determination that it is subject to the ROT Act; and (2) applying certain statutory presumptions in determining that plaintiff is subject to the ROT Act.

We affirm.

BACKGROUND

Plaintiff operates an adult entertainment club in Lake County, Illinois, known as the Cabana Club, which features nude and semi-nude dancing. At the club, plaintiff employs several women who take turns dancing nude or partially nude on a central stage within the

club. Customers are charged $10 to enter the club which entitles them to watch the performances from tables or booths located near the stage. The cover charge also entitles customers to two beverages of either soft drinks or nonalcoholic near-beers (near-beers).

Customers can socialize with the dancers for an additional fee. A customer is charged an additional $10 if he wishes to socialize with the dancer for five minutes; $44 for 15 minutes; and $176 for an hour. Customers are often given additional drinks without being charged, especially if they choose to socialize with one of the off-duty dancers.

Defendant conducted an audit of plaintiff for the years 1986 and 1987. During the relevant period, plaintiff generated an income in the amount of $495,923. At a prehearing conference held on April 19, 1989, defendant requested plaintiff to produce its books and records for the period covered by the audit. Plaintiff, however, did not produce any such documents. However, pursuant to a subpoena, plaintiff provided defendant with the books and records for the 1985 tax year. Based on these records, defendant projected the taxes owed for the period in question and on or about December 3, 1988, served plaintiff a notice of tax liability stating that plaintiff owed the State of Illinois $41,712.92 in unpaid retailer's occupation tax, related interest, and penalties for the period beginning on January 1, 1986, and ending on December 31, 1987.

In response, in a letter to defendant dated December 13, 1988, plaintiff formally protested defendant's determination of its tax liability. The formal protest claimed that: (1) it had paid the correct amount of sales tax due for the years 1986 and 1987, (2) its revenues are primarily generated from providing entertainment to its customers, and, as such, (3) it was only subject to sales tax on approximately $400 per month, the amount spent on fountain drinks provided to customers. On July 25, 1989, a hearing was held before an administrative law judge (ALJ) wherein the parties introduced documentary and testimonial evidence.

At the hearing, defendant presented as evidence (1) the notice of tax liability; (2) an order by the ALJ setting the matter for a hearing; (3) audit work papers and various related documents; (4) corrections of plaintiff's tax returns which were prepared based on the audit information; and (5) plaintiff's letter of formal protest dated December 13, 1988. Included in the audit report were copies of plaintiff's tax returns for retailer's occupation tax for the period beginning on January 1, 1986, and ending on December 31, 1987, as well as computer printouts of the monthly payments of retailer's occupation tax made by plaintiff. After the presentation of the documentary exhibits, defendant rested its case.

Miss Sara Baughman testified on behalf of plaintiff. Miss Baughman testified that she is employed as a staff accountant by the accounting services firm, Alan G. Orlowsky, P.C., utilized by plaintiff. She assisted in the preparation of plaintiff's Federal income tax return for the tax year of 1987. She also assisted in the preparation of other tax forms going all the way back to January of 1986 which were filed with defendant's office, and the information used to prepare plaintiff's tax return was based on the general ledger sheets provided by Mr. Christofalos, the owner of plaintiff. She testified that she assisted in the preparation of monthly tax forms for retailer's occupation tax going all the way back to January 1, 1986, and that the purpose of filing retailer's occupation tax forms for plaintiff was to pay the sales tax on the fountain drinks plaintiff purchased to use in the operation of its business.

In addition, she stated that, at the direction of Mr. Christofalos, the monthly tax returns were completed based on estimates provided by Mr. Christofalos which indicated that plaintiff was taxed on an estimated $400 a month in fountain drink sales, sometimes $425 a month. However, Miss Baughman testified that, in 1986, plaintiff was taxed for $2,945 in sales of near-beer and $750 for soft drinks and in 1987 for sales of $1,833 for near-beers and for sales of $785 for soft drinks. Although she was aware that the retailer's occupation tax returns should not be based on estimates provided by a taxpayer, but rather should be based on actual books and records, she explained the discrepancy in these figures by stating that the retailer's occupation tax returns were based upon estimates provided by Mr. Christofalos and that the corporate income tax returns were based on a general ledger and cash receipts provided by Mr. Christofalos.

Miss Baughman testified that the gross receipts for plaintiff's business were compiled weekly by Mr. Christofalos and sheets were provided to her employer. No cash register receipts were provided to the accountant. The only other documents provided by Mr. Christofalos to the accountant were general ledger sheets and occasional cash receipts.

Copies of plaintiff's Federal and State income tax return forms for 1986 and 1987 as well as the monthly tax returns for retailer's occupation tax were introduced into evidence. These documents bore no signatures. However, no documents were offered to support the expenses for soft drinks and near-beers listed in these exhibits. Included with these exhibits were notices from defendant that plaintiff had not submitted retailer's occupation tax returns for the period from August 1983 to November 1986. Miss Baughman testified that she was familiar with the 1986 income tax return and that the

copy introduced for admission into evidence was a correct copy of the tax return that was filed with the government.

Michael Christofalos testified that he is the owner of plaintiff and the Cabana Club. He testified that the club is open six days of the week, Monday through Saturday, from 12 p.m. until 3 a.m. He charges customers a $10 admission fee at the front door which entitles them to two free drinks of either soda or a nonalcoholic near-beer or one of each. If a customer wanted more than two drinks, the customer would sometimes be charged for the extra drinks and sometimes the extra drinks would be provided free of charge. Even though no food or other merchandise is sold at the club, other income is obtained from customers paying to spend time with the dancers.

He testified that while he used a cash register to tally the admission charges and money received from customers to spend time with the dancers, the cash register did not always contain a register tape. Even when there was a tape in the cash register, Mr. Christofalos did not keep it nor did he provide his accountant with any cash register tapes from his business. However, at the end of the evening, he can press a button on the cash register and the total amount would be displayed at the top of the register. According to him, there were two keys on the cash register. He would ring up the money collected for admission on one cash register key and the money collected for the dancers to sit with the customers on another register key.

Mr. Christofalos maintained a daily sheet on which he would record the money contained in the cash register at the end of every evening. The daily sheet also contained a record of money paid out to the dancers and suppliers. At the end of each week, he would compile the daily sheets onto weekly sheets, which were sent to the accountant every month.

Even though the accountant was provided with the weekly sheets every month, Mr. Christofalos was aware that the accountant was using an estimated figure of $400 a month to prepare the monthly retailer's occupation tax returns. He testified that his $400 estimate has been wrong and that he has been declaring more than his actual sale.

He also provided his accountant with ledgers that showed all of the business activity of the club. In addition, he maintained a corporate checking account and would write checks for distributors or for rent. Underneath the checks was a carbon from which the ledger would be recorded.

Mr. Christofalos purchased the near-beer and cans of syrup for the soft drinks, which were served through a fountain, from a distrib-

utor. If he ever ran out of these items, he would purchase soft drinks in bottles and near-beer from a retail store. When he purchased the items from the distributor, he did not pay sales tax. However, when he purchased the items from a retail store, he was charged sales tax.

His accountant had informed him that he was being audited by defendant. When he receives mail from defendant, he usually gives it to his accountant. He never spoke with a revenue auditor from defendant's office. He testified that he gave his accountant power of attorney in all tax matters involving defendant's office.

Victoria Garza testified that she had been working for the club for seven years as a waitress and was working there as a waitress in 1986 and 1987. She serves customers soft drinks and near-beer. She also stated that customers are not ordinarily charged for their drinks because customers get two free drinks with the admission fee. Although customers occasionally want additional drinks, they are not usually charged because they are usually spending time with the dancers.

As a waitress, Miss Garza is also responsible for asking customers if they want to spend time with the dancers. If a customer answers in the affirmative, she takes the money and then the dancer sits with the customer for awhile during which time they sit and talk and drink their beverages. She comes back later and asks the customer whether he would like to spend more time with the dancer. If he does, then she collects the additional fee. She gives the money that she receives to the bartender, who then puts it in the cash register.

Miss Garza testified that, aside from drinks that are sold to the customers, no other material item of value is served at the club.

Andrew Christofalos, the brother of Michael Christofalos, testified that he has worked at the Cabana Club as a bartender for a couple of years and was at the club for part of 1986 and in 1987. His duties are to run the register and to prepare soft drinks and near-beer. According to him, no food was served at the club.

He testified that the money collected at the door for admission would be turned in to him to be placed in the cash register. To open the cash register, he would push a big button and the cash register would open. He also stated that he would push the same big button on the cash register to place money collected from the waitresses that is spent by customers who spend time with dancers.

During the hearing, plaintiff offered no records to support its contention that no retailer's occupation tax is due. Nor did plaintiff present any records relative to determining which revenues were entertainment receipts and which receipts, if any, involved the sale of tangible property.

Plaintiff requested the opportunity to file a post-hearing brief which the ALJ granted. In its brief, plaintiff maintained that it is not engaged in a retail sales occupation, but rather it was engaged in a service occupation, operating an entertainment facility, and thus its gross receipts are not subject to the ROT Act. In addition, plaintiff pointed out that the $10 admission charge collected from its customers entitles them to two free drinks, which it claimed is incidental to its provision of entertainment services, and argued that since no sales of tangible personal property occurred in the course of its business, it was not subject to the ROT Act. As such, plaintiff posited that it did not owe retailer's occupation tax on its gross receipts or the value of the drinks provided to its customers because they are provided as a natural part of a service provided by its business and the value of the property transferred is small in relation to the charge for the service.

Plaintiff further maintained that defendant failed to sustain its burden of proving that plaintiff was engaged in a retail occupation and thus subject to the retailer's occupation tax and that, because the parties actually disputed whether plaintiff is engaged in a retailer's occupation at all, the statutory presumption that defendant's audit is correct did not apply.

On December 22, 1989, the ALJ entered a recommended decision and order determining that (1) plaintiff was subject to the ROT Act for 1986 and 1987; and (2) by not producing any books or records which would have allowed a determination as to which revenues were entertainment receipts and which involved the sale, use, or consumption of personal property, plaintiff did not successfully rebut defendant's *prima facie* case determining that plaintiff was subject to the ROT Act and that such taxes were owed to the State of Illinois for the tax years 1986 and 1987. The recommendation was approved by the Director of the Illinois Department of Revenue on January 8, 1990. Defendant issued its final assessment against plaintiff on February 7, 1990. Credit, however, was given for retailer's occupation taxes previously collected from plaintiff.

On March 14, 1990, plaintiff filed a complaint in the circuit court of Cook County seeking review of the Department's administrative decision. On September 19, 1990, the trial court dismissed plaintiff's complaint for want of prosecution. On October 11, 1990, the trial court granted plaintiff's motion to vacate the order of September 19, 1990, and ordered plaintiff to file a brief with the court by November 12, 1990.

Subsequently, after briefs were filed by the parties, the trial court, on March 25, 1992, heard oral arguments by the parties and took the

matter under advisement. On August 25, 1992, the trial court entered a memorandum decision affirming the decision of the ALJ as well as defendant's final assessment.

OPINION

I

Section 2 of the ROT Act provides in pertinent part: "A tax is imposed upon persons engaged in the business of selling at retail tangible personal property ***." (35 ILCS 120/2 (West 1992).) Section 1 of the Act defines "sale at retail" as follows:

> " 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale in any form as tangible personal property to the extent not first subjected to a use for which it was purchased, for a valuable consideration ***."
> 35 ILCS 120/1 (West 1992).

Initially, plaintiff contends that the trial court and the ALJ erred in determining that it is subject to the ROT Act. Plaintiff argues that it is not engaged in a retailer's occupation, but rather engages exclusively in providing entertainment services and that any transfer of tangible personal property to its customers is relatively insignificant and purely incidental to the provision of those services. Plaintiff claims that its provision of commercial entertainment services is not subject to the retailer's occupation tax under Illinois law. Plaintiff maintains that even though it does transfer to its customers relatively insignificant amounts of tangible personal property in the form of soft drinks and near-beers, it does so only as a natural incident to its provision of entertainment services and it does not impose any separate charges for the beverages nor does it refund any portion of any other charges to any customer who does not care to consume any of the drinks. In so doing, plaintiff relies upon *American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251, 257-58, 319 N.E.2d 28, wherein our supreme court held that even though the retailer's occupation tax was properly applied to a vendor's sale of food to an airline company, the airline's subsequent use of the food as a provision of meals to its customers as an operating expense, without a separate charge, was not a "sale at retail" within the meaning of the ROT Act, for the proposition that plaintiff's transfers of beverages to its customers do not amount to retail sales transactions within the meaning of the Act and that such transfers do not convert plaintiff into a retailer subject to the Act. Plaintiff asserts that the transfer of relatively insignificant amounts of tangible

personal property to customers as an integral part of the provision of a nontaxable service does not subject a service provider to liability under the ROT Act and that, under such circumstances, it remains engaged in a service occupation rather than in a retailer's occupation. In its brief to this court, plaintiff posits that both the trial court and the ALJ "improperly concluded that defendant had established that plaintiff owes any such tax or any associated interest or penalties to the State of Illinois," and, as a result, "this court must therefore reverse and vacate the Circuit Court's judgment and [defendant's] final assessment against [plaintiff] in this case."

Defendant, however, contends that plaintiff is a retailer which is subject to the ROT Act. Defendant argues that plaintiff, by registering with defendant as a retailer and by filing monthly retailer's occupation returns with defendant, chose to denominate itself as a retailer and to subject its returns to examination and correction for the tax years 1986 and 1987. In addition, defendant maintains that because plaintiff presented no documentary evidence of its nonretail activity and thus failed to show that it was not subject to the ROT Act, the ALJ and the trial court correctly determined that plaintiff is subject to the ROT Act.

In Illinois, the findings and conclusions of an administrative agency are *prima facie* correct and will not be disturbed unless they are against the manifest weight of the evidence. (See *Mel-Park Drugs, Inc. v. Department of Revenue* (1991), 218 Ill. App. 3d 203, 213, 577 N.E.2d 1278.) Section 3—110 of the Illinois Code of Civil Procedure, concerning administrative review (735 ILCS 5/3—110 (West 1992)), provides that administrative findings of fact are to be considered *prima facie* true and correct by the trial court when reviewing a final administrative decision. (See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 213.) In reviewing an administrative agency's decision, a reviewing court's task is not to substitute its judgment for that of the ALJ, but rather to determine whether the agency's judgment is against the manifest weight of the evidence or contravenes existing law. (See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 213.) For the following reasons, we hold that the trial court's determination that plaintiff was subject to the ROT Act for the tax years 1986 and 1987 is not against the manifest weight of the evidence.

The ROT Act (35 ILCS 120/1 *et seq.* (West 1992)) imposes a tax on the gross receipts of sellers of tangible personal property at retail. (See *American Airlines, Inc.*, 58 Ill. 2d at 252.) The tax is imposed on the occupation of selling tangible personal property at retail. (See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 213.) The tax is not a sales tax on the transaction, a property tax on the tangible personal prop-

erty, or a privilege tax on the customer. (See *Greenwalt v. Department of Revenue* (1990), 198 Ill. App. 3d 129, 131, 555 N.E.2d 775.) Rather, it is a tax on the business of selling, and not the sale itself, even though the tax is calculated on the taxpayer's gross retail receipts. See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 213.

The occupation tax system is structured so that only one occupation tax is imposed on a particular item of commerce. (See *Dinner Theatre Associates, Ltd. v. Department of Revenue* (1985), 139 Ill. App. 3d 911, 912, 488 N.E.2d 288.) Thus, persons who are retailers pay tax on their occupation as the seller of goods at retail. (See *American Airlines, Inc.*, 58 Ill. 2d at 255-58.) Persons, however, who are engaged in the occupation of selling services pay a service tax on the goods they buy as an incident of the sale of service. (See 35 ILCS 115/1 *et seq.* (West 1992).) This places service providers in parity with retailers "to the extent they transfer tangible personal property to the ultimate consumer as an incident to the sale of the service." (*Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 214.) As previously stated, a "sale at retail" is defined by the ROT Act as "any transfer of the ownership of *** tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale in any form." (35 ILCS 120/1 (West 1992).) A "sale of service," however, is any transaction other than a "sale at retail" or a sale for the purpose of resale. See 35 ILCS 115/2 (West 1992).

■ We conclude that, in view of the evidence presented at the administrative hearing, the trial court correctly affirmed the ALJ's determination that plaintiff owed the State of Illinois retailer's occupation tax in the amount determined by the audit, for the tax years 1986 and 1987, minus the credit given for retailer's occupation taxes previously collected from plaintiff for those tax years. As a general rule, all sales of tangible personal property are taxable *unless the taxpayer produces evidence identified with its books and records to establish its claim of nonliability.* (See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 217.) The taxpayer has the burden of proving by competent evidence that a proposed assessment is not correct, and when such evidence is not so inconsistent or improbable in itself as to be unworthy of belief, the burden then shifts to the Department, which is then required to prove its case by competent evidence. (See *Mel-Park Drugs, Inc.*, 218 Ill. App. 3d at 217.) Although a "sale at retail" occurs when goods purchased are sold to another, if a sale of service includes a relatively insignificant or incidental transfer of tangible personal property, then a service occupation will be assessed rather than a retailer's occupation tax. (See *Dinner Theatre Associates, Ltd.*, 139 Ill. App. 3d at 912.) If the thing being sold is a personal, profes-

sional or other service, and not tangible property, receipts therefrom cannot be included in measuring the tax. (See *Miller v. Department of Revenue* (1958), 15 Ill. 2d 323, 325, 155 N.E.2d 12.) For example, in *Miller*, our supreme court held that receipts for cover charges for entertainment are not taxable "where they are made exclusively for the privilege of occupying space and where payment thereof does not entitle the patron to any food, beverage, or other tangible personal property." *Miller*, 15 Ill. 2d at 325.

In *Pedigo v. Department of Revenue* (1982), 105 Ill. App. 3d 759, 765, 434 N.E.2d 860, the court held that once some evidence has been introduced by defendant which establishes that plaintiff makes retail sales in general, the burden of production shifts to plaintiff, who then has the burden of overcoming defendant's *prima facie* case with evidence indicating that the alleged retail sales were, in fact, for resale, or were for some other reason nontaxable transactions or which shows that no retail sales were made and that, in fact, no retail business exists. In *Elkay Manufacturing Co. v. Sweet* (1990), 202 Ill. App. 3d 466, 474-75, 559 N.E.2d 1058, this court held that defendant's production of plaintiff's corrected retailer's occupation tax returns was sufficient to establish a *prima facie* case that plaintiff was engaged in a retail occupation and thus subject to the ROT Act.

In the present case, defendant produced corrections of plaintiff's retailer's occupation tax returns for the tax years 1986 and 1987. Although, as in *Sweet*, this, without more, is sufficient to establish a *prima facie* case that plaintiff was engaged in a retail occupation during the period of the audit and thus subject to the ROT Act for that period, there was other evidence that plaintiff was engaged in a retail occupation. Plaintiff submitted monthly retailer's occupation tax returns. Miss Baughman, plaintiff's accountant, testified that the purpose of filing these monthly returns was to pay sales tax on drinks bought by plaintiff which were provided to customers at plaintiff's club. These returns only listed the receipts from sales of tangible personal property and did not list any gross receipts from services furnished. In addition, even though the $10 admission charge entitled customers to two free drinks, the soft drinks and near-beer provided to the customers were generally purchased by plaintiff from a wholesale distributor without the payment of any tax. Thus, under its retailer's certificate, plaintiff was making tax-free purchases for resale. There was also evidence that drinks, in addition to those included as part of the cover charge, were sold at the club. As such, it is clear that "sales at retail" occurred at the club and plaintiff was subject to the ROT Act.

We conclude that plaintiff's reliance on *American Airlines, Inc.*,

is misplaced. *American Airlines, Inc.*, is distinguishable from the case at bar. It is true that in *American Airlines, Inc.*, our supreme court held that an airline company was not subject to the ROT Act for meals which it provided to its passengers because the evidence showed that its provision of meals to its passengers, without a separate charge, was treated as an operating expense of the airline. (See *American Airlines, Inc.*, 58 Ill. 2d at 257-58.) In addition, however, our supreme court also held that the airline company was liable for the retailer's occupation tax on meals served to its crew members because the evidence showed that crew members were given a "meal money award" and when they purchased a meal, the cost of the meal was then deducted from their allotment. (See *American Airlines, Inc.*, 58 Ill. 2d at 259.) In *American Airlines, Inc.*, the evidence presented by the airline company showed that it was able to segregate its records so as to prove which of its (nontaxable) meals were transferred to its customers and which (taxable) meals were served to its crew members. (See *American Airlines, Inc.*, 58 Ill. 2d at 255-59.) Here, once defendant established a *prima facie* case that plaintiff was subject to the ROT Act, the burden shifted to plaintiff to prove otherwise with respect to some or all of its transactions under scrutiny by defendant for the retailer's occupation tax for the period of the audit. Plaintiff, however, did not produce any evidence to rebut defendant's *prima facie* case that plaintiff was subject to the ROT Act. By submitting monthly retailer's occupation tax returns and by charging a fee for drinks not included in the price of admission, plaintiff was admittedly subject to the ROT Act. However, unlike in *American Airlines, Inc.*, plaintiff did not produce evidence that it had segregated its records so as to prove which of its (nontaxable) beverages were transferred to its customers as part of the $10 admission fee and which (taxable) beverages were served to its customers for an additional fee. Therefore, in the absence of reliable records to rebut defendant's *prima facie* case, we cannot say that the trial court's decision that plaintiff owed the State of Illinois retailer's occupation tax in the amount determined by the audit, for the tax years 1986 and 1987, minus the credit given for retailer's occupation taxes previously collected from plaintiff for those tax years was against the manifest weight of the evidence. See *Sweet*, 202 Ill. App. 3d at 475-76; *Pedigo*, 105 Ill. App. 3d at 765.

## II

Next, plaintiff contends that the trial court and the ALJ erroneously applied certain statutory presumptions in concluding that defendant carried its threshold burden of proving that plaintiff is

engaged in a retailer's occupation and thus subject to the ROT Act. Plaintiff argues that the trial court and the ALJ incorrectly determined that the ROT Act applies to all transfers of tangible personal property in Illinois and that plaintiff is required to produce some documentary evidence, identified with its accounting books and records, concerning the nature of its business in order to rebut the statutory presumption that the ROT Act applies to its transfer of personal property to its customers. In addition, plaintiff maintains that the ALJ erroneously concluded that, as a matter of law, plaintiff's actions in obtaining a registration number from defendant in filing its retailer's occupation tax returns subjected plaintiff to the ROT Act, even if plaintiff does not engage in a retailer's occupation. Plaintiff asserts that while defendant is entitled, under the ROT Act, to a statutory presumption that the accounting facts established by a Department audit are true and correct, that presumption only comes into play after a taxpayer is first determined to be subject to the ROT Act. Plaintiff posits that the ROT Act's presumptions are of no consequence where, as here, the parties actually dispute whether a taxpayer is engaged in a retailer's occupation at all.

■ We find no merit to plaintiff's contention. As previously discussed, we conclude that the trial court correctly determined that defendant's production of plaintiff's corrected retailer's occupation tax returns, without more, was sufficient to establish a *prima facie* case that plaintiff was subject to the ROT Act (see *Sweet*, 202 Ill. App. 3d at 474-75), and that once defendant made such a showing, the burden of production shifted to plaintiff to present evidence that it was not subject to the ROT Act. (See *Sweet*, 202 Ill. App. 3d at 475-76; *Pedigo*, 105 Ill. App. 3d at 765.) Thus, the trial court correctly determined that, after defendant made its *prima facie* showing, there was *prima facie* evidence which, if unrebutted, would subject plaintiff to liability under the ROT Act for the period covered by defendant's audit. Accordingly, the trial court did not err in this respect.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.